JOHN P. DONWORTH, and others, *vs.* LOUISE J. SAWYER.

Aroostook.    Opinion May 31, 1900.

*Deed.    Tenants in Common.    Timber.*

Massachusetts, in 1850, being the owner of Township 13, Range 7, Piscataquis county, exclusive of public lots conveyed 2000 acres to be selected in the east half of the township, by the grantor, in one or two lots; and 2000 acres from the west half of the township in lots not exceeding six in number,—all of said lots to be laid out at right angles with the town lines and so as not to interfere with lands of the grantor in the possession of settlers. *Held;* that the deed vested the title thereto in the grantees as tenants in common with the grantor in each half of the township in the proportion that 2000 acres bear to the whole acreage thereof, with a superadded right of selection, on partition proceedings, begun within a reasonable time; but this time has long since elapsed.

*Also, held;* that the same deed to the grantees, of all the pine and spruce timber standing on the township, to be taken off from time to time to suit their convenience, conveyed an interest in land that may descend to the heir, or be conveyed

to a stranger; and may be construed to convey the right to cut pine and spruce timber from the growth standing on the land at the date of the deed until the same shall have become exhausted, or the right to cut otherwise terminated.

ON REPORT.

Trover for the conversion of logs cut, removed and sold by the defendant from Township 13, Range 7, westerly of the east line of the State, in the season of 1897 and 1898. The plaintiffs were then the owners of said township and of all rights appertaining thereto, except 1000 acres, public lots, already set out and except to the extent of the grant contained in a deed from the Commonwealth of Massachusetts to Jewett and March, dated December 3d, 1850.

The defendant claimed no rights except under this deed and by mesne conveyances the defendant had all the rights of the grantees therein named.

The four thousand acres mentioned in the deed, two thousand in the easterly half of said township and two thousand in the westerly half thereof, had never been selected by the defendant, or by her predecessors in title, or set apart in severalty to her or them.

The township contains 22,040 acres exclusive of said public lots and the cutting by the defendant was general over it, except the public lots, and after written notice and prohibition by plaintiffs.

The case was reported to the law court by Mr. Justice WISWELL to determine all questions relating to the construction of the deed to Jewett and March and the legal rights of the parties.

All questions as to damages are to be determined after the decision of the law court in accordance with its opinion, by Honorable Andrew P. Wiswell and two other persons to be by him selected and minuted upon the docket in this case as referees.

### (Deed.)

Know all men by these Presents, That I, whose name is undersigned and seal hereunto affixed, appointed Agent by the General Court of the Commonwealth of Massachusetts to make and execute conveyances agreeably to resolves of said Court, passed the seventeenth day of June, eighteen hundred and twenty, the ninth day of

April, eighteen hundred and thirty-nine, and the twenty-seventh day of February, eighteen hundred and forty-five, and by virtue of powers vested in me by said resolves, for and in consideration of the sum of seventeen thousand four hundred and seventy-nine dollars and ninety-six cents—paid for the use of said Commonwealth by George K. Jewett and Leonard March, both of the city of Bangor in the County of Penobscot and State of Maine, Merchants and Co-partners in trade, Assignees of Thomas F. Gould and John G. Weld, the original Contractors for the premises hereinafter described; the receipt whereof I do hereby acknowledge, have given, granted, sold and conveyed, and by these presents, in behalf of said Commonwealth, do give, grant, sell and convey unto the said George K. Jewett and Leonard March all the right, title and interest of the said Commonwealth in and unto the following described land, to wit:

· Two thousand acres of land to be selected in the east half of Township number thirteen of the seventh range of Townships West of the East line of said State of Maine, in one or two lots, and two thousand acres from the west half of said Township in lots not exceeding six in number and all of said lots are to be laid out at right angles with the town lines, and so as not to interfere with my lands now in possession of Settlers, and also is hereby conveyed to the said Jewett & March all the pine and spruce timber standing on said Township number thirteen of the seventh range, to be taken off from time to time to suit their convenience. Provided, however, if any lot or lots of land shall be sold for settlement in said Township the timber on any lots so sold shall be removed the next lumbering season after notice is given to said Jewett & March or their assigns of the sale of any such lots, or as soon thereafter as may be practicable. Hereby meaning to be understood that this sale of timber shall not operate to retard the settlement of the Country, and it is further agreed, that no recourse is to be had to said Commonwealth for any deficiency in the quantity and quality of timber estimated to be thereon.

To Have and to Hold the aforegranted premises with all the privileges and appurtenances thereof to the said George K. Jewett

and Leonard March and to their heirs and assigns, to them and their use and behoof forever. In Witness Whereof, I have hereunto set my hand and seal this third day of December in the year of our Lord eighteen hundred and fifty.

GEORGE W. COFFIN. [L. S.]

Signed, sealed and delivered
    in presence of us
      EDW. A. SNELLING
      CHAS. W. LEAVITT

*J. W. Symonds, D. W. Snow, C. S. Cook and C. L. Hutchinson,* for plaintiffs.

(1) The deed to Jewett and March does not have the effect to make them or their successors in title tenants in common with the grantor or its successors in title, nor to vest the fee to any part of the township in said Jewett and March, or their successors in title, until a selection of the 4000 acres shall have been made in accordance with the limitations and conditions contained in the deed.

It does not appear in the deed that the four thousand acres were intended to be conveyed to the parties to be held in common and undivided with the grantor. On the contrary the intention is plain, we submit, that the four thousand acres were to be selected and held in severalty by the grantees. It was expressly stipulated in the deed that two thousand acres, in not exceeding two lots, were to be selected from the east half of the township, and two thousand acres, in not exceeding six lots, from the west half of the township, and with the further express condition as to boundaries that said lots should be laid out at right angles with the town lines and so as not to interfere with lands then in possession of settlers. *Phillips* v. *Tudor,* 10 Gray, 82; *Blessing* v. *House,* 3 G. & J. 290, p. 291. This is not the case presented in *Brown* v. *Bailey,* 1 Met. 256.

There was granted to Jewett and March no general right of selection of a fractional part of the township at its just and proportionate value, nor even a general right to select four thousand acres without regard to value or location; but, as we have said, there was granted to them only a limited and restricted right, the limi-

tations and conditions upon the right of selection being in the nature of reservations in favor of the grantor. *Dyer* v. *Lowell*, 30 Maine, 219.

But assuming (which we deny) that the defendant is tenant in common with plaintiff in the township, still she would have no authority to cut the timber and to remove and sell the same as it appears from the report that she did do. If this were done without thirty days' notice in writing to her co-tenants, she would be a trespasser and liable in treble damage to them (R. S., ch. 95, § 5); and apart from the statute the cutting, removal and sale of the timber by her would be an unlawful conversion for which she would be liable in trover to the plaintiffs as her co-tenants. *Herrin* v. *Eaton*, 13 Maine, 196; *Strickland* v. *Parker*, 54 Maine, 268; *Dain* v. *Cowing*, 22 Maine, 349; *Carter* v. *Bailey*, 64 Maine, 464; *Wing* v. *Milliken*, 91 Maine, 387.

(2.) The grant of timber was only of "the pine and spruce timber" standing on the township at the date of the deed, and had no effect to pass any right or title to any trees that should after that date become timber.

"A deed is to be construed with reference to the actual rightful state of the property at the time of the execution. The parties are supposed to refer to this for a definition of the terms made use of in their deed." 3 Wash. R. Prop. (4th Ed.) 384; *Putnam* v. *Tuttle*, 10 Gray, 48; *Boults* v. *Mitchell*, 15 Pa. St. 365; *Warren* v. *Short*, 119 N. C. 39; *Whitted* v. *Smith*, 2 Jones, 36; *Irwin* v. *Patchen*, 164 Pa. St. 51; *Andrews* v. *Wade*, (Pa. Sup. Ct. Oct. 4, 1886) 6 Atl. Rep. 48; *Carter* v. *Williamson*, (Ga. Dec. 20, 1898) 31 S. E. Rep. 651; *Shiffer* v. *Broadhead*, 126 Pa. St. 260.

The words of the deed are "estimated to be thereon" not that should thereafterwards be thereon. An estimate of the timber then standing was the only estimate which was made or which it was practicable to make.

Under the second clause in the deed to Jewett and March nothing was conveyed to them except what was pine and spruce timber standing on the township at the date of the deed; the grant did not have the effect to convey after-grown trees of any class, either

those which should spring up subsequently to the date of the deed or those which after that date should develop into timber; and nothing went to Jewett and March by the deed except what was in fact pine and spruce timber at the date of the grant.

(3)   What was meant by the phrase "pine and spruce timber" is to be determined by the common and understood meaning of such words, according to the custom in lumbering on St. John waters at the date of the deed.

Counsel cited: Century Dictionary; *Nash* v. *Drisco*, 51 Maine, 417; *Babka* v. *Eldred*, 47 Wis. 192; *Shiffer* v. *Broadhead*, 126 Pa. St. 260.

(4)   The right to cut and remove the timber from time to time to suit the convenience of Jewett and March could not in any event extend beyond the lives of Jewett and March, whose personal convenience was the limitation imposed upon such right by the deed, and the grant, therefore, was only of so much of the timber standing on the township at the date of the deed as might be removed within the time limited.   The provision as to the settlement of the town was simply a special limitation upon the time already fixed and could not operate in any way to enlarge such time.

Where a grant of growing trees or timber is made and a certain number of years stated within which the grantee shall have the right to cut and remove the same, the grant is only of such trees and timber as the grantee may cut and remove within the time stated. *Pease* v. *Gibson*, 6 Maine, 81; *Howard* v. *Lincoln*, 13 Maine, 122; *Webber* v. *Proctor*, 89 Maine, 404; *Reed* v. *Merrifield*, 10 Met. 155; *White* v. *Foster*, 102 Mass. 375.

The pine and spruce timber standing on said township .   .   .   . to be taken off from time to time to suit their convenience, is a definite limitation of time upon the grant as effective as if the time had been limited to ten years.

The grant, even, is not to Jewett and March "their heirs and assigns."   It could not operate to give assigns a longer time in which to take the timber off than it gave Jewett and March. *Whitted* v. *Smith*, 47 N. C. 39.

Doctrine of reasonable time: *Morris* v. *Sanders*, (Ky. Dec. 7, 1897) 43 S. W. 733; *Perkins* v. *Stockwell*, 131 Mass. 532; *Gilmore* v. *Wilbur*, 12. Pick. 120; *Atwood* v. *Cobb*, 16 Pick. 227; *Atwood* v. *Wade*, 6 Atl. Rep. 48; *Warren* v. *Leland*, 2 Barb. 613; *Webber* v. *Proctor*, 89 Maine, 407.

*F. H. Appleton and H. R. Chaplin*, for defendant.

Both Maine and Massachusetts have always regarded the settling of the lands in Maine of great importance, and both states have held the lands owned by them as valuable for settling purposes rather than for timber.

The deed in question should be interpreted in the light of the facts, conditions and circumstances as they existed in 1850, not in the light of the facts, conditions and circumstances of to-day.

They were not given to be construed, by making fine distinctions and raising ingenious technicalities.

The Amer. & Eng. Ency. of Law, Vol. 11, page 512, states the rule thus: "He who interprets should as far as possible put himself in the position of the parties at the time the writing was executed, and cites *Baltimore & Ohio Railroad* v. *Brydon*, 65 Md. 198; *Nash* v. *Towne*, 5 Wall. 689.

The state regarded the land as valuable mainly for settling, and retained the soil for settling purposes and settling purposes only, and was willing that pine and spruce should continue to grow there till the town should be sold for settlement. When Jewett and March were through with the possession of it, the possession was to come back to the state not for lumbering purposes, not for the timber on it, but for settling purposes.

The deed conveyed all the pine and spruce growth (which would make timber) standing on the town at and from the time when the deed was executed up to the time the soil should be sold for settlement. The state could give a perpetual right to take off such timber or she could give a perpetual right subject to such right being defeated by a condition subsequent.

Leake on Contracts, p. 838, (Ed. of 1878) lays down the rule that a contract is to be construed with reference to the time of the

performance. The time when the timber is to be taken off is within one year after the lots are sold for settlement or as soon thereafter as practicable.

The word "timber" has no one fixed meaning but the meaning of the word is elastic and that meaning should be ascribed to it which comports with the context. The pine and spruce timber standing on this town means, we submit, the pine and spruce growth.

If Massachusetts did intend to convey only the timber standing at the date of the deed, we agree with the plaintiff that the word "now" should have been used, and we say further, that because the word "now" is not before the word "standing" is proof that it was not intended to be there, and that the word "standing" is used in contradistinction to the word "down," and the words "timber standing" mean growth. Almost the identical language in this deed is used in the deeds whereby the timber and grass on the public lots in this state are conveyed.

If the defendant's interpretation is put upon the deed, the words "timber standing" will be given a meaning which is not uncommon, the whole deed will be given a natural and logical and not a strained construction, and every part of the deed will be consistent with every other part. The grantees will own simply standing timber, as the deed calls for, and when the lots are sold for settlement the grantee will remove the timber on the lots sold just as provided in the deed.

SITTING: EMERY, HASKELL, WHITEHOUSE, STROUT, FOGLER, JJ.

HASKELL, J. Trover for the conversion of certain pine, spruce and cedar logs.

The defense is:

I. That the logs were cut from common lands of the plaintiffs and defendant.

Massachusetts, in 1850, being the owner of Township 13, Range 7, westerly from the east line of the State, containing 22,040 acres,

exclusive of public lots, conveyed to defendant's predecessors 'in title, "2000 acres of land to be selected in the East half the township . . . . in one or two lots; and 2000 acres from the West half of said township in lots not exceeding six in number, and all of said lots are to be laid out at right angles with the town lines and so as not to interfere with my lands now in possession of settlers." No selection of the lots or partition of the land has been made. The residue of the township belongs to the plaintiffs. The question is, are the parties tenants in common, or is the conveyance under which defendant claims inoperative and-void?

There are cases which hold that a conveyance by one tenant in common of a specific quantity or parcel in severalty is inoperative against the co-tenants and voidable by them. One case of that sort is cited at the bar. *Phillips* v. *Tudor*, 10 Gray, 78. There, one tenant in common conveyed 64 rods from the common land, and it was held that, if the deed be valid as against all persons, except the other tenants in common, it could not take effect until the grantee had entered and made certain the parcel that he claimed to hold. So in *Soutter* v. *Porter*, 27 Maine, 405, it is held that a conveyance by one tenant in common of a part of the common property by metes and bounds, though inoperative against the co-tenants, may operate to convey the land to the grantee, when the grantor's part of the common property shall have been set out to him or his interest comprising it.

A deed by tenants in common with others of a specific number of acres from the common lands, less than their share, is valid, and conveys a fraction of the estate. *Small* v. *Jenkins*, 16 Gray, 155; *Jewett* v. *Foster*, 14 Gray, 495; *Battel* v. *Smith*, 14 Gray, 497; *Gibbs* v. *Swift*, 12 Cush. 393.

In *Brown* v. *Bailey*, 1 Met. 254, much relied upon by the plaintiffs at the bar, a testator devised one-fifth of his real estate to a son "to be taken where he shall choose or select at its just and proportionable value." The court held that the estate vested, with a privilege for the devisee to exercise or not at pleasure on partition.

Apply these doctrines to the deed in question. The grantor owned the whole township. It conveyed 2000 acres, not from

common lands, but from lands held in severalty, of land in the east half of the township, to be selected in one or two lots to be laid out at right angles with the town lines, and so as not to interfere with lands in possession of settlers. The manifest intention was to sell 2000 acres in the east half of the township. Had the deed said no more, the grantee would have taken his fraction of the east half of the township, in common with the grantor. *Sheafe* v. *Wait,* 30 Vt. 735; *Preston* v. *Robinson,* 24 Vt. 583. The deed does not say, to be held in common, but that is the logical. result. It must be that or nothing. The clause, "to be selected," implies that title passed to be held in common until selected. The right of selection was not a condition precedent, but, as said in *Brown* v. *Bailey,* a right superadded, to be exercised or not at the will of the grantee upon partition, and if exercised then in lots at right angles with town lines and so not as to disturb settlers.

We think the defendant is a tenant in common with plaintiffs of the east half of the township in the proportion that 2000 acres bear to the whole acreage of that half of the township.

We also think that defendant is a tenant in common with plaintiffs of the west half of the township in the proportion that 2000 acres bear to the whole acreage of that half of the township.

We also think that the right of selection that might have been exercised by defendant, in both halves of the township, has been lost by lapse of time. It was a privilege to have been exercised within a reasonable time, and we think that has long since elapsed. The property was wild land, covered with growing timber. Portions of it may have been cut, of which defendant was entitled to her share, and it would be unfair to allow a selection to be now made from that portion uncut. That would be unequal and unjust. When no time is fixed within which an act is to be done, the law fixes a reasonable time. *Weymouth* v. *Gile,* 83 Maine, 437; *Mitchell* v. *Abbott,* 86 Maine, 338.

For the logs cut from the common lands by the defendant, to which she has no other title than as tenant in common, the plaintiffs may have damages, for the conversion of their shares therein. *Wing* v. *Milliken,* 91 Maine, 387; *Wheeler* v. *Wheeler,* 33 Maine,

347 ; *Carter* v. *Bailey*, 64 Maine, 458 ; *Strickland* v. *Parker*, 54 Maine, 263 ; *Dain* v. *Cowing*, 22 Maine, 347 ; *Herrin* v. *Eaton*, 13 Maine, 193.

II.    That the pine and spruce trees from which the logs were cut were the property of defendant.

In the deed from Massachusetts, before mentioned, under which defendant claims title, was the grant "of all the pine and spruce timber standing on said township . . . . to be taken off from time to time to suit their [grantees,] convenience." If lots were sold for settlement, the timber was to be removed the next lumbering season after notice to grantees or their assigns of the sale, or "as soon thereafter as may be practicable." The sale of the timber was not to retard the settlement of the country, nor were the grantees to have recourse to the grantor for any deficiency in the quantity and quality of timber estimated to be upon the township.

It is common learning that the construction to be given deeds must have relation to the time and circumstances under which they were given, and that they are ordinarily to be construed most strongly against the grantor. *Field* v. *Huston*, 21 Maine, 69. The converse rule, however, applies to grants by the sovereign power when not purely commercial and especially when they are gratuitous and are not moved by a full and adequate consideration. Here the consideration was $17,479.96. This grant is clearly enough of pine and spruce trees standing on the land at the date of the deed, and of none other, to be removed at the convenience of the grantees or their assigns. *Putnam* v. *Tuttle*, 10 Gray, 48.

It is contended at the bar that the grant is not only limited to trees standing on the land at the date of the deed, but to pine and spruce trees then suitable for timber. But the grant is not of trees suitable for timber. It is of " pine and spruce timber." Now the word " timber " should be given the meaning suited to the purposes of the grant apparent from the whole deed. The timber of commerce is squared sticks of wood used in building. The trees from which they were cut became known as timber trees. " Command them that they hew me cedar trees out of Lebanon." " I will do all they desire concerning timber of cedar and timber of

fir." So, too, stock on hand for manufacturing purposes, regardless of its size, is called timber. "A man of Tyre, skilled to work in gold, and in silver, in brass, in iron, in stone and in timber, in purple, in blue and in fine linen and in crimson." The statutes of the United States in encouraging the growth of forests and prohibiting their destruction apply the word timber to all sorts of trees, young or old. So, too, under the statute of this state relative to driving logs, "pulp wood or any other wood product suitable for commerce or manufacture that may be conveniently driven to market," is held to be included in the word timber. *Bearce* v. *Dudley*, 88 Maine, 410.

The grantor's purpose, as expressed in the deed, was to foster the settlement of public domain, and, in furtherance of that purpose, it sold the pine and spruce in question, to be removed so that the land could the more easily be cleared. Its purpose was to clear the growth without regard to size, giving the grantees their own time to do so, but always fast enough to accommodate settlers. It wanted the forest cleared, not preserved; and we think, under all the circumstances, the meaning of "pine and spruce timber" was understood to be pine and spruce growth; that the word timber was not used in the sense of trees, suitable to then make timber, but as synonymous with trees or growth. There could have been no object to give to the word a different meaning, and we think the whole grant shows the purpose to have been not to grant trees only suitable for timber, but rather trees of the kind for timber, pine and spruce, timber trees. In other words, to grant the right of lumber from the pine and spruce standing at the date of the deed, at the grantees convenience until the then existing growth should have been removed, but fast enough to not retard settlement of the lands. Any other construction would be both inconvenient and lead to controversies that might be interminable. It is well known that pine and spruce lands in the region of this township do not reproduce the same kind of growth.

Nor is this construction of the deed an unnatural or strained one. The word "timber" is given meaning to fit the sense in which it is used. It may mean "wood suitable for building houses or ships,

or for use in carpentry, joinery, etc., trees cut down and squared or capable of being squared and cut into beams, rafters, planks, boards, etc.," or "growing trees, yielding wood suitable for constructive uses: trees generally; woods." Cent. Dict. "I learned of lighter timber cotes to frame." Prior. "The straw was laid below, of chips and fere wood was the second row, the third of greens and timber newly felled." Dryden. "We take from every tree lop, bark, and part of the timber, and tho' we leave it with a root thus hackt, the air will drink the sap." Shakespeare. The prairie is bare of timber. They sought shelter in the timber, meaning woods. The acts of congress encourage the planting of timber and protect it, meaning small trees.

In this State and some others the conveyance of growing trees to remain alive upon the land and to be cut in the future, is a conveyance of an interest in land, that may nourish and support the growth conveyed. The trees become chattels only when severed from the soil. Until then they are a part of it. *Dunn* v. *Burleigh*, 62 Maine, 24; *Hoit* v. *Stratton Mills*, 54 N. H. 109; *Howe* v. *Batchelder*, 49 N. H. 204; *Plumer* v. *Prescott*, 43 N. H. 277; *Kingsley* v. *Holbrook*, 45 N. H. 314; *Olmstead* v. *Niles*, 7 N. H. 522; *Putney* v. *Day*, 6 N. H. 430; *Heflin* v. *Bingham*, 56 Ala. 566; *Clap* v. *Draper*, 4 Mass. 266; *White* v. *Foster*, 102 Mass. 375.

It is not, as before said, a strained construction to hold that ordinarily a grant of growing timber to be construed most favorably to the grantee, conveyed the growth named with its increase, until the time for removal shall have elapsed. This seems to be the view taken in *Pease* v. *Gibson*, 6 Greenl. 81, although other questions were decided, and in *Howard* v. *Lincoln*, 13 Maine, 122. *Putney* v. *Day*, 6 N. H. 430, apparently adopts it. See *Knott* v. *Hydrick*, 12 Rich. 314.

*Goodwin* v. *Hubbard*, 47 Maine, 395; *Strout* v. *Harper*, 72 Maine, 270, and *Foster* v. *Foss*, 77 Maine, 279, throw but little light upon the question, but contain nothing against it.

In *McIntyre* v. *Barnard*, 1 Sanford Ch. 52, cited with approval in *Kellam* v. *McKinstry*, 69 N. Y. 264–269, and in *Lacustrine F.*

*Co.* v. *Lake Guano, etc., Co.*, 82 N. Y. 476–482, was the grant "all the pine timber standing or being" on the land to be cut and removed by January 1, 1841. The grant was made May 27, 1836. The court said: "The object of the grant was the sale of all the pine logs which should be taken off by January 1, 1841," citing *Pease* v. *Gibson* and *Howard* v. *Lincoln.* The last named case was a reservation. The same rule for construction that is applicable to a grant applies to limit the reservation. It was "of all the pine timber . . . . above the size of ten inches in diameter twenty feet from the stump," and the court held only such timber, existing at the date of the deed, was reserved. Surely that should be so, for the description was specific. All the cases cited at the bar by the plaintiffs but two uphold the same doctrine, and were cases of exceptions or reservations, or where the trees granted were specifically described either by size or adaptability for certain uses. These are the cases. *Nash* v. *Drisco*, 51 Maine, 417, was a sale of timber and bark down as small as ten inches, and the court held cord-wood was not conveyed and that the sale of timber excluded trees unsuitable for any purpose but fire wood. *Babka* v. *Eldred*, 47 Wis. 189, held that under a statute giving a lien on logs and timber, a lien did not attach to lath cut therefrom. *Shiffer* v. *Broadhead*, 126 Pa. St. 260, held that a grant of standing pine and hemlock timber was timber by a local custom to ten inches in diameter at top end of twelve-foot log, first cut from the butt. *Boults* v. *Mitchell*, 15 Pa. St. 364, was a reservation of timber suitable for sawing and rafting. *Warren* v. *Short*, 119 N. C. 39, was a sale of timber twelve inches in diameter at the stump. *Robinson* v. *Gee*, 4 Ired. 186, was a reservation of "saw-mill pine timber on the land standing or being, or which may hereafter stand or be, on the said land;" and it was held that the grantee was not liable in trespass for the cutting of pine saplings. *Whitted* v. *Smith*, 2 Jones, 36, was an exception of "all the pine timber that will square one foot," and it was held that only such timber as existed at the date of the deed was excepted. *Irwin* v. *Patchen*, 164 Pa. St. 51, is confused and of doubtful authority. It seems to hold that a parol reservation of

standing timber is limited to timber merchantable at the time. *Andrews* v. *Wade*, (Pa.) is not reported in the State reports, but is found in 6 Atl. Rep. 48, a per curiam opinion. It was a reservation of "all the pine and hemlock timber growing on said lands," and the court held that only trees of suitable size for use at the date of the reservation were included in it. This is the only case directly in point cited to sustain the plaintiff's contention. *Carter* v. *Williams*, 106 Ga. 280, was a lease of "all the round timber or timber suitable for turpentine purposes," and it was held that only such timber standing at the date of the lease passed.

There is another Pennsylvania case where the grantor reserved " all the pine timber" with the right to cut and remove it for twelve years. The court say: " The limitation upon the right of entry was a limitation upon the exception itself. It was a reservation of the timber for twelve years and no longer. After that time, the trees remaining passed with a grant of the soil to which they were attached. This is the construction placed upon such agreements in the lumber regions where they are frequent, and it accords with reason and common sense." *Saltonstall* v. *Little*, 90 Pa. St. 422; *Boisaubin* v. *Reed*, 1 Abbt. 161. Contra, *Irons* v. *Webb*, 12 Vroom, 203.

A sale of merchantable standing timber conveys that particular timber only and at once. *Haskell* v. *Ayers*, 35 Mich. 88. Same as to saw timber, *Monroe* v. *Bowen*, 26 Mich. 522.

The precise question, here at issue, does not seem to have been very much considered by the courts, and therefore it must be decided by applying the most reasonable construction to the deed of the parties. Where, as in this state, the grant of growing trees to remain affixed to the soil or the exception of them from the grant, is an interest in land, it is logical to consider the trees, and the right in the soil, and the growth of them as a unit and inseparable. Their owner is entitled to their increase. The grant of trees, or timber, or particular kinds of timber trees, should be held a grant of the growth, standing at the time of the grant. If the grant limit itself by size of tree, age, or adaptability for specified uses, then of course the particular described tree would pass and none

other. But where there is no limitation of that character, and the grant is of standing timber, to be taken off in the future, the common understanding would be that the grantee might cut timber from the lot until the present growth, suitable for the purpose, shall have been exhausted, or until the right to cut shall have expired by limitation, either express or implied.

That must have been the purpose of the grant in question. Massachusetts said to the grantees, for a valuable consideration, you may "log" for pine and spruce on the township at your pleasure, but fast enough to clear the land for settlers as they may come.

But it is said that the grant was limited to the grantees and could not be conveyed by them. We do not think so. The grant was of an interest in land, to be held by the grantees, "their heirs and assigns, to their use and behoof forever." The cases already cited sustain this view. See *Baxter* v. *Mattox*, 106 Ga. 354.

Our conclusion is that the plaintiffs and defendant are tenants in common of the township, and that plaintiffs may recover the value of their shares in the cedar logs cut by defendant, and also in any pine and spruce so cut that were not standing at the time of conveyance to Jewett and March in 1850.

*Defendant defaulted.*