Fogo, Appellant, vs. Boyle and others, Respondents.

*November 10—December 4, 1906.*

*Findings of fact, what constitute: Appeal and error: Review in absence of findings: Evidence: "Timber:" Injunction.*

1. A record containing what is therein called "findings of fact," which are at most mere conclusions that the plaintiff cannot recover, and hence that defendants are entitled to costs, does

not show compliance with sec. 2863, Stats. 1898, and such fail-
ure to determine the issues litigated justifies a reversal and
new trial, unless it can be said that the judgment is supported
by a preponderance of the evidence.

2. The meaning of the word "timber" has more or less flexibility,.
   depending upon time, place, and circumstances, as well as the
   language of the instrument in which it is employed.

3. Under a contract conveying "all the timber" on the land described,
   the same to be removed by a certain date, the evidence, stated
   in the opinion, is *held* to sustain a judgment denying an in-
   junction to restrain the cutting of standing saplings, small
   trees, or any other trees more suitable for cord wood, fire
   wood, pole wood, or underbrush than for timber.

APPEAL from a judgment of the circuit court for Richland
county: GEORGE CLEMENTSON, Circuit Judge. *Affirmed.*

*A. C. Vaughan,* for the appellant.

For the respondents the cause was submitted on the brief of
*L. H. Bancroft.*

CASSODAY, C. J.   This action was commenced December 8,
1904, to restrain the defendants from cutting or removing
from the premises therein described standing saplings, small
trees, or any other trees more suitable for cord wood, fire
wood, pole wood, or underbrush than for "timber." It is con-
ceded that the plaintiff became the owner of the land de-
scribed May 9, 1904, under and by virtue of a deed executed
by the owners and heirs at law of one Foley, then deceased,
subject, however, to a written contract made and executed by
the said Foley and the defendant *Bart Boyle,* January 23,
1904, wherein and whereby the said Foley, since deceased,
agreed to sell to the said *Bart Boyle* "all the timber" on the
land described, the same to be removed by March 1, 1906, in
consideration of $115 to be paid by the said *Bart Boyle* to the
said Foley.   It further appears that May 16, 1904, the said
*Bart Boyle,* for value received, sold and assigned said written
contract and all his right, title, and interest in the property
thereby conveyed to the defendant *Henry Palmer.*   It also

appears that November 29, 1904, the said *Henry Palmer,* for value received, sold and assigned said written contract and all his right, title, and interest in the property covered by that contract to the defendant *John Boyle.* Each of said defendants justifies such cutting and removal under and by virtue of said written contract. At the close of the evidence the court overruled the plaintiff's motion to strike out all of the parol testimony, and "found for the defendants and $1 damages for the injunction." Thereupon the court made and filed what are therein called "findings of fact and conclusions of law," wherein the court "found for the defendants that said action was not properly brought and that the prayer of the plaintiff should be denied and the injunctional order . . . be dissolved, and that the defendants have their costs and disbursements herein," and ordered judgment accordingly. Thereupon the court ordered and adjudged that the complaint be dismissed and the injunctional order be dismissed and dissolved, and that the defendants have and recover from the plaintiff their costs and disbursements, taxed and allowed at $55.31. From such judgment the plaintiff appeals.

The statute provides that "upon a trial of a question of fact by the court its decision shall be given in writing and filed with the clerk," and that such decision shall state separately "the facts found" and the "conclusions of law thereon." Sec. 2863, Stats. 1898. Such requirement is not only to show what was really adjudicated, but also to facilitate a review on appeal. The question here at issue was whether the words "all the timber" on the lands described covered and included standing saplings, trees, or other trees more suitable for cord wood, fire wood, pole wood, or underbrush. Much of the parol testimony on the part of the plaintiff as well as on the part of the defendants related to the meaning of the word "timber," as thus used. The court refused to strike out such parol testimony, apparently, because it was pertinent to such issue. But, as indicated, the court failed

to determine such issue. What are called "findings of fact" are at most mere conclusions that the plaintiff could not recover, and hence that the defendants were entitled to costs. Such failure to determine such issue would, under recent and repeated decisions of this court, justify a reversal and a new trial, unless we can say that the judgment is supported by a preponderance of the evidence. *Brown v. Griswold,* 109 Wis. 275, 280, 85 N. W. 363; *Bostwick v. Mut. L. Ins. Co.* 116 Wis. 392, 440–444, 89 N. W. 538, 92 N. W. 246; *Farmer v. St. Croix P. Co.* 117 Wis. 76, 93 N. W. 830; *McKenzie v. Haines,* 123 Wis. 557, 102 N. W. 33; *Sliter v. Carpenter,* 123 Wis. 578, 102 N. W. 27. As indicated in the adjudicated cases, the meaning of the word "timber" has more or less flexibility, depending upon time, place, and circumstances, as well as the language in which it is employed. 8 Words & Phrases, 6972, 6973. In Maine it has been said not to be a strained construction to hold that ordinarily a grant of growing timber is to be construed most favorably to the grantee, so as to convey the growth named with its increase, until the time for its removal shall have elapsed. *Donworth v. Sawyer,* 94 Me. 242, 47 Atl. 521. In the same case it is said that "the construction to be given to deeds must have relation to the time and circumstances under which they were given." 94 Me. 252, 47 Atl. 523. In a case in a federal court in Florida it was held that "the term 'timber,' as used" in the statute prohibiting the cutting of live oak and red cedar trees and other timber, "does not apply alone to large trees fitted for house or ship building, but includes trees of any size of a character or sort that may be used in any kind of manufacture or the construction of any article," and that the cutting could not be justified by using the trees for fire wood or burning them into charcoal. *U. S. v. Stores,* 14 Fed. 824, 825. After quoting from Webster's Dictionary, it is there said that "with so many peculiar significations, the intended meaning of the word usually depends upon the con-

nection in which it is used or the character of the party making use of it." Under the same federal statute a similar conclusion was reached by the supreme court of Arizona, where it was also held that "the question of whether or not mesquite is timber must necessarily be one of fact, dependent upon the character of the wood charged and shown to have been cut or removed in each particular case, and is not a question which can properly be determined upon a demurrer to the indictment." *U. S. v. Soto*, 7 Ariz. 230, 64 Pac. 419. In this state it has been held that the word "timber," as used in the lien statutes, "includes railroad ties." *Kollock v. Parcher*, 52 Wis. 393, 398, 399, 9 N. W. 67. It was there said that such statute should be liberally construed. The Century Dictionary gives seven definitions. Among them we find: "(2) Growing trees, yielding wood suitable for constructive uses; *trees generally;* woods. . . . (4) Stuff; material. (5) A single piece of wood, either suitable for use in some construction or already in such use."

It appears from the evidence on the part of the plaintiff that, before completing the purchase of the land, he was shown and read over the written contract made nearly four months before, wherein Foley had sold "all the timber on" the land to *Bart Boyle,* and was told that he must take the land subject to that contract, and he then said: "Yes, this contract calls for all the timber;" that he understood that *Boyle* had a right to cut the timber on that land. On the part of the defendants there is evidence tending to prove that the plaintiff knew of the *Boyle* contract before he bought the land, and had read the same and saw *Boyle* cutting wood and timber and everything; that in buying the land the plaintiff said he did not get the timber; that the timber had been disposed of; that he thought it was as well or better for him because the land was worth more cleared than with the timber on; that in that conversation the plaintiff asked *Boyle* if he would leave some trees down by the road for shade and *Boyle* told him that he would. A witness who had lived long in the country and had dealt

·considerably in lands in the county testified that "timber" on land lying adjacent to Richland Center, in his judgment, in-·cluded cord wood; that in that vicinity nearly all the timber land had been culled and the saw logs taken off, and the word ·"timber" would certainly include cord wood.

After careful examination of the record and with consider-able hesitation, we must hold that the judgment is sustained by a preponderance of the evidence, notwithstanding the ab-sence of findings. In reaching this conclusion we are in-fluenced to some extent by the fact that the plaintiff is not only seeking to reverse the judgment of the trial court, but is also invoking the equity powers of the court to grant an injunction, which certainly rests in the sound discretion of the court.

*By the Court.*—The judgment of the circuit court is af-firmed.