F. S. BAKER v. MICHAEL KENNEY, Appellant.

**Sale of standing timber:** RIGHT OF REMOVAL: CONSTRUCTION OF CONTRACT. In the construction of an instrument for the sale of timber with the privilege at all times of entering upon the land for the purpose of cutting and removing the same, and in determining the intention of the parties with respect to the future growth of timber and a perpetual right of removal, it. is immaterial that the instrument was entitled a bill of sale, or that a part of the description in the warranty was of goods and chattels, or that the same was recorded in the chattel mortgage records, except as such circumstances may tend to explain the intent of the parties.

**Same:** EASEMENTS. A sale of standing timber to be cut and removed within a specified time creates no interest in the land; and until the timber is severed and converted into chattel property the right of the purchaser thereto is not ' vested: There may be however an irrevocable right created by a writing, 'or provable by parol because of performance or payment, which will create an interest in the land, and the right thus acquired is in effect an easement.

**Same:** CONTRACT FOR SALE OF TIMBER: CONSTRUCTION. Where the owner of premises conveyed to his grantee, his executors and assigns, "all the timber and growth of timber" on certain lands with the privilege at all times of entering upon the land to cut and remove the timber, the instrument also reciting, "to have and to hold the same unto the said party of the second part, his executors, etc., forever," no time being fixed, a perpetual right to remove the timber was granted although the term heirs was not used; as the term heirs or other technical words of inheritance are not necessary under' our statute to create an estate in fee.

**Same.** It is also held that the terms "timber" and "growth of timber," as used in the grant were intended to convey all the wooded growth on the land at the time, and when construed in connection with the designation of the grant as "forever," it also transferred the right to cut and remove future growth, and was

not a mere personal privilege which must be exercised within a reasonable time.

*Appeal from Lucas District Court.*—HON. M. A. ROBERTS, Judge.

## WEDNESDAY, FEBRUARY 9, 1910.

ACTION to quiet title. The court sustained a demurrer to defendant's answer, and, on election of defendant to stand on his pleading, a decree was entered for plaintiff, from which defendant appeals.—*Reversed.*

*W. W. Bulman,* for appellant.

*Stuart, Stuart & Stuart,* for appellee.

MCCLAIN, J.—In 1893 William Lyons, who was then the owner of the ten-acre tract of land situated in Lucas County to which this controversy relates, executed to defendant an instrument duly acknowledged and recorded, of which the following is the material portion:

Know all men by these presents: That we, Wm. Lyons and Cecelia Lyons, his wife, of the township of Whitbreast, county of Lucas and state of Iowa, parties of the first part, for and in consideration of the sum of one hundred and fifty dollars, lawful money of the United States, to be paid by Michael Kenney, of the township of Whitbreast, county of Lucas and state of Iowa, party of the second part, the receipt whereof is hereby acknowledged, have bargained and sold, and by these presents do grant and convey unto the said party of the second part, his executors, administrators and assigns, all timber and growth of timber on the north fourth of the S. E. ¼ of the N. E. ¼, of Sec. 11, Twp. 72, R. 22 West, with privilege at all times to enter upon the above-described lands for the purpose of cutting, hauling timber therefrom. The said Wm. Lyons to make proper openings in his fence for the passage of teams to haul timber therefrom, and the

said Michael Kenney to keep such gate or other opening so constructed, closed, as to prevent stock from entering or escaping therefrom. To have and to hold the same unto the said party of the second part, his executors, administrators and assigns forever. And I do for myself, my heirs, executors and administrators, covenant and agree to and with the said party of the second part, his executors, administrators and assigns, to warrant and defend the sale of said property, goods and chattels hereby made unto the said party of the second part, his executors, administrators and assigns against all and every person or persons whomsoever.

The plaintiff as the grantee of Lyons asks in this action that his title be quieted as to any remaining right which defendant may claim or assert under this instrument, and that it be canceled and defendant directed to execute his quitclaim deed; or, if the court concludes that defendant has not had a reasonable time to remove the timber from said land, and that he is entitled to further time to do so, then the court fix the time within which defendant may remove said timber after which his rights under the instrument shall terminate. In his answer defendant alleges the circumstances under which the instrument was executed as tending to show a purpose on the part of defendant to acquire in perpetuity a right to take timber for fence post, firewood, and other uses from the land described, to be enjoyed by him in connection with the ownership of a farm not far distant, which right was also to be enjoyed by his executors, administrators, and assigns forever. Defendant also pleads a custom and usage of the neighborhood as to the meaning of the words "timber" and "growth of timber," by which the latter term had the meaning of the future growth of any and all timber on the land, and he alleges that there is now on the land a growth consisting of small trees, shrubs, and sprouts of no value for immediate removal, but which will mature into usable timber. The answer also contains allegations

as to the rights acquired by defendant under the instrument referred to which constitute conclusions of law and purport to raise issues which might properly have been raised and determined by demurrer to plaintiff's petition. Plaintiff demurred to the answer in substance on the ground that it stated no defense, and the court sustained the demurrer. After defendant had elected to stand upon his answer, the case was submitted to the court on evidence as to whether defendant had had a reasonable time in which to exercise the right of taking timber and growth of timber from the land under the stipulations of the instrument, and the court decreed that defendant should be given two years' further time to remove the timber and growth of timber to which he was entitled, after the expiration of which period all the right, title, and interest of defendant under the instrument should terminate, and plaintiff and his grantees should become entitled to the exclusive possession and use of the land described. The recitals of the findings of the court made in its decree show that the answer of defendant was treated as a demurrer to plaintiff's petition, and that, in sustaining plaintiff's demurrer to this answer, the court in effect overruled defendant's allegations of law which might have been made by way of demurrer, and, so far as the construction of the instrument is to be determined by rules of law, we may properly consider the case as though it had been submitted on a demurrer by defendant to the allegations of plaintiff's petition and such demurrer had been overruled, and decree for plaintiff entered on such ruling.

In construing the instrument above set out, no consideration need be given to the fact that its title or heading, as appears from the record, was "Bill of Sale," nor that a part of the description in the warranty, was of "goods and chattels," nor that it was in fact recorded in the Chattel Mortgage Records, although that fact does not appear

1. SALE OF STANDING TIMBER: right of removal: construction of contract.

from the abstract. It is wholly immaterial what the parties call the instrument or the right described or where the instrument is recorded, save as possibly these circumstances may throw light on the intent. But, as against the plain terms of the recitals of the granting clause and covenant, they are entitled to no weight.

A purchaser of standing timber to be cut and taken from land within a specified time acquires no interest in the land. *Sanders v. Clark*, 22 Iowa, 275. Such license 2. SAME: ease- may be established by parol evidence, be- ments. cause it conveys no interest in land, and the right to the timber which the licensee is authorized to remove becomes vested only when the trees are severed and converted into chattel property. *Agne v. Seitsinger*, 85 Iowa, 305; *Michigan Iron & Land Co. v. Nester*, 147 Mich. 599 (111 N. W. 177); *Melhop v. Meinhart*, 70 Iowa, 685; 1 Tiffany, Real Property, section 304. There may be, however, an irrevocable license created in writing or provable by parol evidence on account of performance or payment of consideration under our statute which is an interest in land, and the right acquired under such a license is in effect an easement or right analogous thereto. *Cook v. Chicago, B. & .Q. R. Co.*, 40 Iowa, 451.

It is clear that whatever right the defendant acquired in this land was irrevocable and was an interest in the land itself, and we have to determine from the language of the 3. SAME: con- instrument the nature and extent of that tract for sale of timber: right. It is plainly of the general nature construction. of an easement, but differs from an easement in that it involves the right to appropriate and take away that which is a part of the land itself, the growing timber. Such a right is usually described as *"profit à prendre,"* which term is used to include also such rights in regard to another's land as that of cutting grass or pasturing cattle, of taking coal or mineral from the soil, of taking water that has been artificially accumulated or restrained so as

to be a source of power, and of hunting or fishing. 14 Cyc. 1142; 23 Am. & Eng. Enc. (2d Ed.) 186. Rights both of easement and of *profit à prendre* are usually granted or reserved in deeds or acquired by prescription as appurtenant to other real property than that over which they are to be enjoyed; that is to say, there is usually a dominant estate to the ownership of which the right attaches, and a servient estate as to which it may be exercised, and, when such right is thus created as appurtenant, it can not be severed from the ownership of the dominant estate so as to exist as an independent right, but passes only as an incident to the ownership of that estate. *Ring v. Walker,* 87 Me. 550 (33 Atl. 175).

But some rights of easement and many rights of *profit à prendre* are of such character that they may be acquired and exercised in gross, and not merely as appurtenant. While language is to be found in some text-books and opinions of courts to the effect that an easement in gross is a personal privilege not assignable or transmissible by inheritance, it will be found on examination that these expressions of opinion relate to particular kinds of easements which are in the nature of personal privileges only. See, for example, *Boatman v. Lasley,* 23 Ohio St. 614, involving a private right of way which the court held to be a personal privilege, and *Cadwalader v. Bailey,* 17 R. I. 495 (23 Atl. 20, 14 L. R. A. 300), where a restriction on building to obstruct a view of the sea from certain premises was held to be extinguished if severed from the premises for the benefit of which it was made. See, also, Washburn, Easements (3d Ed.) 10. In 2 Blackstone, Commentaries, 35, it is said that a right of way granted to a particular person not appurtenant dies with the person. But a right *profit à prendre* which involves the beneficial use by one person of the land of another to derive profit therefrom may in its very nature exist in gross, and not merely as appurtenant. One example of such a right is

that of common in gross, which is described by Blackstone (2 Id. 34) as a right not appendant or appurtenant to land, but annexed to a man's person, being granted to him and his heirs by deed, or it may be claimed by a prescriptive right. "This," he says, "is a separate inheritance, entirely distinct from any landed property, and may be vested in one who has not a foot of ground." And see notes in Hammond's Edition, on pages 418-420 of volume 2, where it is said there is no question that the law recognizes incorporeal hereditaments in gross—that is, not appurtenant to lands, as rights *in rem,* quoting from Digby, History of Law of Real Property, 130. Speaking of the reservation of water power in a deed, Mr. Justice Campbell, in *Hall v. City of Ionia,* 38 Mich. 493, says:

There is no foundation for the claim that a right to the perpetual use of water must be dependent on a particular estate with which it is connected. Some confusion has perhaps been caused by an attempt among writers to create symmetry in the law by putting all rights connected with lands or springing from them into classes, and by speaking of these particular rights as easements, which very commonly require both a dominant and a servient estate. But every right of property must usually have some peculiar qualities of its own, which must not be destroyed by inappropriate attempts to classify it with different kinds. The old maxim, '*Omnis definitio periculosa,*' is especially true when things of essentially different qualities are placed together under one head. The value of water as a distinct inheritance, either for creating power or for other purposes of use or consumption, has been recognized in all periods, and its ownership is well established as not dependent on lands to which it may be appurtenant, but as having a separate and intrinsic importance. There may be an occasional dictum, and possibly some decisions to the contrary; but most cases where any doubt seems raised on this question will be found to rest on peculiar facts which in no way involved the general doctrine. The facts are often such as to confine the use of water, not only to special places, but also to specified purposes. But this limited use is the exception, and not the rule.

There can be no doubt at this time of the power to create in favor of one person an assignable and inheritable right to use for profit, the land of another who grants such right by apt language in a deed or consents to it in a reservation, and such right need not be created or reserved as appurtenant to other property. *Goodrich v. Burbank,* 12 Allen (Mass.) 459 (90 Am. Dec. 161); *Huntington v. Asher,* 96 N. Y. 604 (48 Am. Rep. 652); *Taylor v. Millard,* 118 N. Y. 244 (23 N. E. 376, 6 L. R. A. 667); *Leyman v. Abeel,* 16 Johns. (N. Y.) 30; *Tinicum Fishing Co. v. Carter,* 61 Pa. 21 (100 Am. Dec. 597); *Columbia Water P. Co. v. Columbia Elec., etc., Co.,* 43 S. C. 154, 169 (20 S. E. 1002; s. c. 172 U. S. 475, 491, 19 Sup. Ct. 247, 43 L. Ed. 521); Washburn, Easements (3d Ed.) 126, 528. The language of the instrument before us indicates that the parties contemplated the right on the part of defendant and his administator or assigns to take timber and growth of timber from the described land. There is not only a failure to fix a time limit, but the *habendum* clause expressly describes the right as one which is to exist forever. It is true in neither the granting clause nor the *habendum* are the heirs of the grantee mentioned, and at common law the grant would be construed to be for life only. But in this state "the term 'heirs' or other technical words of inheritance are not necessary to create and convey an estate in fee simple." Code, section 2913. And the form of warranty deed authorized by statute as conveying a fee-simple title does not include such words. Code, section 2958. If a grantor, desiring to prepare an instrument which should convey to the grantee a fee-simple title to the incorporeal hereditament described in the instrument as the right to take timber and growth of timber from designated land, should attempt to frame a deed for that purpose, he could not, having regard to the laws of this state, do so in apter words than those used in the instrument before us, and we reach

the conclusion that such was his purpose. The reservation to himself of the fee-simple title in the land would not be by any means a barren right. He could still use the land for pasture or for any other purpose not inconsistent with the preservation of the timber and growth of timber thereon. For instance, he could exercise or dispose of the right to remove any coal there might be under the surface, and he could enjoy the benefit and exclusive control of any springs or streams of water thereon; in short, he could make any use of the land whatever, not inconsistent with the continued existence of the incorporeal right of the grantee to enjoy the timber privileges.

The contention for appellee is that the grant shall be construed as relating only to the timber growth on the land at the time of the grant, and, in support of this contention, it is argued that "timber" and "growth of timber" mean the same thing. If the term "timber" alone had been used, it might perhaps have been open to argument, in the absence of any proof of local usage, whether the term was used to designate trees that had been cut down for the purpose of being made into timbers or growing trees yielding wood suitable for constructive uses (see Century Dictionary, s. v. Timber; also Webster's Dictionary, where the meaning of the word is given for western United States as "wood or forest, wooded land"), but the addition of the term "growth of timber" not only makes it plain that the intent was to grant all the wooded growth on the land, but also in connection with the designation of the grant as "forever" shows the purpose to have been to transfer the right to take away future growth. The appropriate meaning of the term "growth" as given in Webster's Dictionary is "that which has grown or is growing; anything produced; product," and in the Century Dictionary, "that which is grown; anything produced; a product." "Timber" and "growth" are not synonymous even when the latter is manifestly used to relate

4. SAME.

to timber growth. *Lord v. Meader,* 73 N. H. 185 (60 Atl. 434). "Where, as in this state, the grant of growing trees to remain affixed to the soil or the exception of them from the grant is an interest in land, it is logical to consider the trees and the right in the soil and the growth of them as a unit and inseparable. Their owner is entitled to their increase. The grant of trees or timber or particular kinds of timber trees should be held a grant of the growth standing at the time of the grant. If the grant limit itself by size of tree, age, or adaptability for specific use, then, of course, the particular described tree would pass and none other. But where there is no limitation of that character, and the grant is of standing timber, to be taken off in the future, the common understanding would be that the grantee might cut timber from the lot until the present growth, suitable for the purpose, shall have been exhausted, or until the right to cut shall have expired by limitation, either express or implied." *Donworth v. Sawyer,* 94 Me. 242, 256 (47 Atl. 521). Cases cited for appellee simply announce the well-recognized rule that, under a contract for the sale of growing trees to be removed within a specified time, the licensee acquires only the right to cut and remove trees during that time, and, if the time is not specified, then within a reasonable time. *Johnson v. Truitt,* 122 Ga. 327 (50 S. E. 135); *Brinson v. Kirkland,* 122 Ga. 486 (50 S. E. 369); *Allison v. Wall,* 121 Ga. 822 (49 S. E. 831); *Hawkins v. Goldsboro Lumber Co.,* 139 N. C. 160 (51 S. E. 852); *Taylor-Brown Timber Co. v. Wolf Creek Coal Co.,* 32 Ky. Law Rep. 1015 (107 S. W. 733; *Bowerman v. Taylor,* 127 Ky. 812 (106 S. W. 846, 32 Ky. Law Rep. 671); *Garden City Stave, etc., Co. v. Sims,* 84 Ark. 603 (106 S. W. 959); *Liston v. Chapman, etc., Land Co.,* 77 Ark. 116 (91 S. W. 27); *Kidder v. Flanders,* 73 N. H. 354 (61 Atl. 675).; *Wallace v. Kelley,* 148 Mich. 336 (111 N. W. 1049, 118 Am. St. Rep. 580). But these cases are not in any way inconsistent

with the exercise by the owner of the land of the power to create a fee-simple title in an incorporeal right in the nature of *profit à prendre* which thus created is inheritable and assignable. We reach the conclusion that the language of the instrument before us unequivocally establishes the grant of such a right in the defendant.

The decree of the trial court by which the right of defendant under this instrument is declared to be in effect only a personal privilege which must be exercised within a reasonable time fixed by the decree as two years from the date of its rendition is reversed, and the case is remanded to the lower court, with direction that plaintiff's petition be dismissed, or the defendant at his election may have a decree to the same effect entered in this court.— *Reversed.*