McKenzie, Respondent, vs. Haines and wife, Appellants.

*December 13, 1904—January 10, 1905.*

*Trial: Findings of facts: Highways: Dedication: Acceptance: Evidence: Injunction.*

1. Under sec. 2863, Stats. 1898, requiring the trial judge to state in his decision the facts found by him, and his conclusions of law thereon, only the ultimate conclusions of fact drawn from the evidentiary facts and essential to the settlement of the conflicting claims of the parties should be stated, and omnibus findings to the effect that all the material allegations of the complaint are proven, and that the allegations of the answer inconsistent therewith are unproven, fail to respond to the mandate of the statute. *Farmer v. St. Croix P. Co.* 117 Wis. 76, and other cases, followed.

2. In an action in equity to compel the removal of obstructions from an alleged highway, and to enjoin future obstruction thereof, the evidence, stated in the opinion, is *held* to negative the claim that the use of the *locus in quo* was so extensive or long continued as to demonstrate acceptance by the public of an offered dedication.

APPEAL from a judgment of the circuit court for Sauk county: R. G. Siebecker, Circuit Judge. *Reversed.*

This is an action in equity to compel the removal of obstructions upon an alleged public highway in the village of Merrimac, and to enjoin any future obstruction thereof. The answer' denies the existence of the alleged highway, and claims title by adverse possession. River street, in the village of Merrimac, runs nearly north and south, and the disputed parcel of land is a strip fifty feet wide, running at right angles with River street, and extending west therefrom to Second street, which runs parallel with River street. The plaintiff admittedly owns the land adjoining this strip upon the south and fronting upon River street, and has a barn upon her property fronting on the strip. The defendant admittedly owns the parcel of land adjoining the strip upon the

north, and fronting on River street, and claims also to own the strip itself. The evidence showed that in 1858 one Flanders owned a large tract of land, including the lands of plaintiff and defendant as well as the strip in question, and on the 25th of June of that year deeded a large parcel thereof, including the properties of the plaintiff and defendant, to one Butterfield, the deed containing the following clause:

"Reserving fifty feet in width commencing at the center of said land on River street, and running south seventy-two and one half ($72\frac{1}{2}$) degrees west to the westerly line of said land; also reserving fifty feet in width commencing near the center of the northern line of said land and running south eighteen and one half ($18\frac{1}{2}$) degrees west through said land, and extending and continuing to Main street, so-called, said reserved land to be and is hereby appropriated for a public highway, and to be used for no other public purposes whatsoever."

It appears further that a mistake was made in said clause by using the word "south" instead of "north" where the word "south" first occurs in the clause, and that in the year 1876 an action in equity was brought by Flanders against Butterfield and another to correct the description of said reservation, which action resulted in a judgment, in the same year, correcting said description by inserting the word "north" instead of the word "south," so that it correctly describes the strip in question, and further adjudging that the defendants be enjoined from obstructing the strip; that subsequently the plaintiff acquired title to her present premises on the south side of the strip, and built her barn; that title to the land on the north side of the strip was subsequently conveyed to the defendant; that in 1880 Flanders quitclaimed to one Quimby "the lands reserved for streets" in the deed from Flanders to Butterfield; and that by subsequent deeds, containing the same description, said strip was conveyed from Quimby to Shepard in 1885, from Shepard to Barrow in 1891, and that in 1901 Barrow and wife conveyed by warranty deed to the defendant and wife the parcel upon the north side of the

strip, as well as the strip itself. The principal question of fact in the case was as to whether the alleged street had been accepted by the public as a highway, either by general user or by the expenditure of public moneys thereon, or both; and upon this question the testimony was very conflicting, there being testimony tending to show both user and working, and also testimony tending to show that it had never been opened to the public for any considerable length of time, and that any user by the public was permissive, and very slight. The court found, among other things, as follows:

"That said street so dedicated has been used by the public to some extent, particularly for foot travel, although for a large portion of the time the west end was fenced across, and such travel was through a gate or bars. That the plaintiff has made use of said strip or street as and for an approach to her barn, and as a means and way of gaining access to her said barn and her premises. That said strip or street was at times fenced in in part, and used for garden and agricultural purposes by one Shepard, who claimed to be the owner thereof; and that said Shepard built or dug a well several years ago upon said strip or street under the same claim of ownership. That the right and interest of the plaintiff in the public easement in said street and in having the same opened and kept open as a street and as a way and approach to her barn and premises is different from and in addition to the right of the general public, and is special and peculiar to her as the owner of the property described in her complaint, adjacent thereto. That all the material facts stated and set forth in the complaint are proven and true, and that the allegations of the answer inconsistent therewith are unproven and are not true. And as conclusions of law the court finds: That there is nothing in the fact that said Shepard constructed said well upon or in said street, or in the fact that said street had been fenced in and used for garden or agricultural purposes, and nothing in the proofs or the facts shown upon the trial which estops the public or said plaintiff from asserting the public right to said strip of land as so dedicated to public use as a street. That the rights of the public and of said plaintiff in and to said street, and to have the same opened and cleared of obstruc-

tions, have not been lost by abandonment, nonuser, or in any other manner. That the plaintiff is entitled to judgment, and to the relief demanded in the complaint."

Judgment was rendered for the plaintiff on these findings, and the defendant appeals.

For the appellants there was a brief by *Grotophorst, Evans & Thomas,* and oral argument by *E. A. Evans.*

For the respondent the cause was submitted on the brief of *G. Stevens.*

WINSLOW, J. This is an action in equity to obtain the removal of obstructions in an alleged public highway, and to enjoin its future obstruction. It was brought by a private party on the ground that such party suffered peculiar damage different in kind from that suffered by the public generally by reason of the obstructions. The question litigated was whether the *locus in quo* was in fact a public highway.

A public highway may be created by the making and recording of a plat, in conformity with ch. 101, Stats. 1898, with the highway or street indicated thereon, and when this is done no act on the part of the public is necessary to make it a public highway. Sec. 2263, Stats. 1898; *Gardiner v. Tisdale,* 2 Wis. 153; *Pettibone v. Hamilton,* 40 Wis. 402. Where, however, there has been no compliance with this statute, a public street may also be created when the proprietor, by his acts, has indicated his intention to dedicate the same to public use as a street, and this offer of dedication has been accepted by the public authorities by assuming control and expending public moneys thereon, or by actual user thereof by the public to such an extent and for such time as to show that public convenience requires the same. *Buchanan v. Curtis,* 25 Wis. 99. A highway may also be created by long-continued prescriptive use by the public; but, as no claim of this kind is here made, it is unnecessary to enlarge upon this proposition. It is not claimed in the present case that there was

any plat made or recorded; hence, if any public highway exists, it must exist by virtue of a parol or written dedication by the owner, and acceptance of such dedication by the public. We cannot doubt that the so-called reservation in the original deed from Flanders to Butterfield in 1858, by which the strip in question was reserved and "appropriated for a public highway," amounts to an offer to dedicate the same for public highway uses. It was a standing offer, clearly showing the owner's intent to dedicate, and might be accepted by the public in the manner hereinbefore mentioned at any time before it was withdrawn. Being merely an offer, it could, of course, be withdrawn before acceptance. It was undoubtedly, in legal effect, withdrawn when the owner, in 1880, made a deed of the strip to Quimby. The question, then, is whether the evidence shows acceptance by the public before that withdrawal. Upon this question—which was the turning point of the case—the findings of the trial court manifestly ought to be clear and conclusive. The statute requires the trial judge to state in his decision "(1) the facts found by him, and (2) his conclusions of law thereon." Sec. 2863, Stats. 1898. The requirement that the "facts found" be stated manifestly requires not merely that evidentiary facts be stated, but that the ultimate conclusions of fact drawn therefrom and essential to the settlement of the conflicting claims of the parties should be stated. In the present case a finding that the public used the strip to some extent at times would not be specially illuminating nor helpful, because it would not settle the ultimate fact, namely, whether such use was sufficiently general and continuous as to constitute an acceptance of the offer of dedication. Turning now to the findings, we find just the difficulty referred to. The only findings of fact which in any way touch the question are as follows:

"That said street so dedicated has been used by the public to some extent, particularly for foot travel, although for a large portion of the time the west end was fenced across, and

such travel was through a gate or bars; that the plaintiff has made use of said strip or street as and for an approach to her barn, and as a means and way of gaining access to her said barn and her premises.; that said strip or street was at times fenced in in part, and used for garden or agricultural purposes by one Shepard, who claimed to be the owner thereof, and that said Shepard built or dug a well several years ago upon said strip or street under the same claim of ownership."

These are the only findings of fact which in any way touch the question of acceptance by the public, except for an omnibus finding that all the material allegations of the complaint are proven, and that the allegations of the answer inconsistent therewith are unproven. As conclusions of law the court only found, in effect, that the public was not estopped by the acts of Shepard, and had lost no rights in the street by abandonment, nonuser, or in any other manner, and that the plaintiff was entitled to judgment. It is difficult to conceive of findings more vague or inconclusive upon the vital question in issue. When was this use by the public? Was it before or after 1880? When was the street fenced, and for how long did it remain so? What was the extent of the public use? Was it sufficiently extensive and long continued as to show that public convenience required the street? All these and other questions equally vital and necessary in order to determine the question of acceptance by the public use are entirely undetermined, unless, indeed, it can be said that the omnibus finding to the effect that the material allegations of the complaint are proven and true supplies the deficiency, the complaint alleging that immediately after the conveyance of 1858 the strip was opened to the public for travel and was traveled and used as a highway for many years. The unsatisfactory character of this sort of a finding, and its utter failure to respond to the mandate of the statute, has been already commented upon by this court in the cases of *Milwaukee Nat. Bank v. Gallun,* 116 Wis. 74, 92 N. W. 567, and *Burke v. Sidra Bay Co.* 116 Wis. 137, 92 N. W. 568; in the latter of

which cases it was, in substance, held that, where such a statement is attempted to be substituted for specific findings of fact, it becomes necessary for this court to examine the evidence to ascertain whether it supports the judgment.

We shall not undertake in the present case to discuss at large the importance of a full compliance on the part of the trial courts with the statute requiring specific findings of fact in every action tried by the court. That question is sufficiently considered in certain recent cases, among which, in addition to those previously cited, may be named *Brown v. Griswold,* 109 Wis. 275, 85 N. W. 363, and *Farmer v. St. Croix P. Co.* 117 Wis. 76, 93 N. W. 830. The attention of the bar and trial courts is again called to these cases, and especially to the discussion in the *Farmer Case.*

There being no finding of the fact of acceptance by the public, nor of facts from which such acceptance must follow as a legal consequence, we pass to the consideration of the evidence itself upon the question, remembering that the burden of proof of the fact is upon the plaintiff. Upon such consideration we find the evidence of any acceptance by the public by working or by public use, either before or after the revocation of the offer of dedication in 1880, to be very unsatisfactory. The sole evidence of any working of the strip as a highway by the public authorities is given by the witness Odekirk, who testified that at one time he did some work upon it in working out his road tax by digging and removing some stone to make a better roadway, and that he worked on the street at one other time. He first says that he dug the stone in 1868 or 1869, and that he worked in the road after the suit at Mauston (1876). He then says that he worked on the street and its approach at two different times; but whether it was before or after the suit at Mauston he could not say, but that three or four years intervened between one job and the other. Manifestly, such vague and uncertain testimony cannot be relied upon to support a conclusion of acceptance by

working it as a highway prior to 1880. The evidence as to public user is equally unsatisfactory. True, a number of witnesses testify to having used the strip, or seen others use it, at various times, for passage, but all are quite vague as to time, and substantially admit that there were times when it was closed, and long periods when it was cultivated. The testimony seems overwhelming that since 1884 the strip has been cultivated most of the time, as well as fenced in from the public. Charles Williams, a witness for the plaintiff, who lived on the Haines place from 1872 till 1883, testifies that during that time the strip was both open and closed at different times, and that there was a kind of a squabble over it all the time, and this seems to pretty accurately describe the situation. There was much testimony also that much of the use at all times was permissive, and through gates or bars. Upon the whole testimony we are clearly of the opinion that the evidence does not prove that the use of the strip, either before or after 1880, was so extensive or long continued as to demonstrate that the public convenience required the same.

As the evidence seems to have been fully presented, we deem it best to make a final disposition of the case in this court.

*By the Court.*—Judgment reversed, and action remanded with directions to enter judgment for the defendant dismissing the complaint.

Siebecker, J., took no part.