CATLIN & POWELL COMPANY, Respondent, vs. SCHUPPERT, Appellant.

*January 30—February 19, 1907.*

*Trial: Findings, when not necessary: Foreign corporations: Right to transact business and maintain actions: Interstate commerce: Statutes: Construction: "Acquire, hold or dispose of property in this state:" "Affecting the personal liability."*

1. Findings are required to cover and settle controverted questions of fact, but where a fact is established by proper stipulation between the parties, or by admissions of the pleadings, a finding on the same fact is not necessary.
2. Sec. 1770b, Stats. 1898, as amended by sec. 27, ch. 351, Laws of 1899, chs. 399, 434, Laws of 1901, ch. 124, Laws of 1903, and

ch. 506, Laws of 1905, provides, among other things, that foreign corporations doing business in Wisconsin shall take' certain steps, and forbids any such corporation which has not complied with the statute to "transact business or acquire, hold or dispose of property in this state." The statute further provides that every contract made by or in behalf of any such foreign corporation, "affecting the personal liability thereof," or relating to property within Wisconsin, before it shall 'have complied with the provisions of such statute, "shall be wholly void in its behalf and on behalf of its assigns, but shall be enforceable against it or them." The defendant, a resident of Wisconsin, by letter written from Wisconsin, employed the plaintiff, a corporation residing and operating in New York, as stock broker to purchase for defendant in New York shares of the stock of a corporation foreign to Wisconsin and transmit the same to the defendant in Wisconsin, where defendant would pay'through the usual collection agencies. To this the plaintiff, on its part, assented and fully performed in New York all the contract except the act of delivering the muniments of title to and collecting payment from the defendant. *Held*, that the plaintiff was entitled to recover on such contract, since the contract was without the terms of the statute and neither the transmission of the certificates of stock nor the collection of the money due the plaintiff for its services and disbursements in purchasing the shares in New York came within the terms "acquire, hold or dispose of property in this state."

3. Such words mean, not that the act of acquisition, but that the property, must be within Wisconsin.

4. In such statute the words "affecting the personal liability thereof" do not include all contracts for the breach of which the corporation would be liable in damages.

5. The words of such statute, "affecting the personal liability," used in describing one of the prohibited classes of contracts, are *held* to intend to exclude all unilateral contracts, like bills and notes, all contracts fully executed outside Wisconsin upon which there remains as obligation only payment, or payment and delivery, to be made in this state, and all contracts not by their stipulations imposing duties or liabilities on such foreign corporations.

6. In such case the transaction between plaintiff and defendant is *held* to constitute an act of commercial intercourse, and hence, as between the parties, an act of interstate commerce.

7. Certificates of stock in a corporation are mere muniments of title to the shares, which are fractional interests in the corporate property.

APPEAL from a judgment of the circuit court for Ashland county: JOHN K. PARISH, Circuit Judge. *Affirmed.*

The circuit court for Ashland county in this action made findings and rendered judgment against the appellant on an agreed statement of facts. From admissions in the pleadings and the stipulated facts it appears that plaintiff is a New York corporation carrying on in the city of New York a general commission and brokerage business and buying and selling stocks and bonds. The complaint averred that the plaintiff at the city of New York, at the request of the defendant, purchased for defendant 1,000 shares of the capital stock of the Arizona Copper Mountain Mining Company of Phœnix, Arizona, at thirty-five cents per share, and that he further agreed to pay plaintiff an additional $25 for obtaining a transfer of said stock into the name of defendant on the books of the said mining company, all of which plaintiff performed. The answer, after some admissions, contained a general denial, followed by an averment that, if any contract was entered into as averred in the complaint, the same was entered into at Glidden, Ashland county, Wisconsin, and that the plaintiff corporation was not licensed to do business within this state. By the stipulation of facts it was also agreed that the sole question in the case was: Is the plaintiff, which was not licensed under the laws of Wisconsin to do business in this state, entitled to maintain this action and recover therein? The contract was entered into by correspondence between defendant, residing at and writing from Glidden, Wisconsin, and the plaintiff, resident at and writing from New York. April 6, 1904, defendant wrote plaintiff stating that he could use 5,000 shares of said mining company stock and would pay eighteen and one-half cents per share therefor. April 8th plaintiff answered to the effect that the market was thirty cents per share. April 11th defendant wrote making an offer of thirty-five cents per share for 5,000 shares or less, and ordering the stock if sent to be forwarded to the Wisconsin State Bank

with draft attached. April 14th plaintiff wired defendant that it had secured 1,000 shares at thirty-five cents, and the same date plaintiff wrote defendant that it had bought for his account 1,000 shares of the mining stock at thirty-five cents per share and was sending the same to defendant with draft through the Glidden bank, and that if it could pick up any more of the stock for defendant it would advise him by wire. April 16th defendant wrote acknowledging receipt of plaintiff's letter of April 14th, giving some excuse for delay, and adding, "But draft will be promptly honored next week," and requesting more stock, adding, "Hope you can secure more stock." The stock with draft attached came to the Glidden bank, the indorsements of transfer were informal and not satisfactory to defendant, and he returned it to New York to the plaintiff to have the same transferred on the corporate books of the mining company into his name, offering to pay the plaintiff $25 for attending to the transfer and asking the plaintiff to get him more of the stock. The plaintiff procured the transfer of the stock on the books of the mining company to the name of defendant, returned it to the Glidden bank with draft for $375 attached, and after some further correspondence the defendant refused to pay the draft or accept the shares, on the ground that the plaintiff was an unlicensed foreign corporation. There is no proof to show the domicile of the Arizona Copper Mountain Mining Company of Arizona except what may be inferred from its name, but the shares in question had to be returned to New York in order to be transferred on its books into defendant's name. The circuit court found these facts, but failed to find the admitted fact that the plaintiff was a foreign unlicensed corporation, and did find that the plaintiff in the city of New York, at the instance and request of the defendant, purchased and obtained for the defendant said stock. Error is assigned in not finding that plaintiff was a foreign corporation which had failed to comply with the provisions of sec. 1770$b$, Stats.

1898; in finding contrary to the stipulated facts; in not finding that the contract was a Wisconsin contract; in not finding as a matter of law that defendant was entitled to judgment.

For the appellant there was a brief by *W. Stanley Smith,* attorney, and *R. Sleight,* of counsel, and a reply brief signed *R. Sleight,* attorney, and oral argument by *Mr. Sleight.*

For the respondent there was a brief by *Sanborn, Lamoreux & Pray,* attorneys, and *H. B. Walmsley,* of counsel, and oral argument by *F. B. Lamoreux.*

TIMLIN, J.   Findings are required to cover and settle controverted questions of fact, but where a fact is established by proper stipulation between the parties, or by admissions of the pleadings, a finding on the same fact is not necessary. *Wilkinson v. Wilkinson,* 59 Wis. 557, 18 N. W. 527; *Sliter v. Carpenter,* 123 Wis. 578, 102 N. W. 27; *McKenzie v. Haines,* 123 Wis. 557, 102 N. W. 33.   A finding that the plaintiff was a foreign corporation which had failed to comply with the requirements of sec. 1770b, Stats. 1898, as amended by sec. 27, ch. 351, Laws of 1899, ch. 399, Laws of 1901, ch. 434, Laws of 1901, ch. 124, Laws of 1903, and ch. 506, Laws of 1905, because of the stipulation and the condition of the pleadings was not necessary.   It is contended that the findings of the court are contrary to the stipulated facts, in that the facts show a contract for the purchase of shares by the defendant from the plaintiff, while the finding is to the effect that at the defendant's request the plaintiff purchased and obtained for the defendant the shares in question.   But the pleadings, together with the stipulated facts as above recited, are quite sufficient to sustain this finding.   We shall therefore consider the contract as one whereby the defendant, a resident of Wisconsin, by letter written from Wisconsin, employed the plaintiff, a stockbroker residing and operating in New York, to purchase for defendant in New York 1,000 shares of the stock of a corporation foreign to Wisconsin and

transmit the same to the defendant in Wisconsin, where defendant would pay through the usual collection agencies, and that the plaintiff, on its part, assented to and fully performed in New York all the contract except the act of delivering the muniments of title to and collecting payment from the defendant. Sec. 1770*b*, Stats. 1898, amended as above indicated, provides in the last amendment (ch. 506, Laws of 1905) a very complete plan for the regulation of foreign corporations doing business in this state, by requiring each to file with the secretary of state a copy of its charter and the amendments thereunto authenticated as there prescribed, together with certain sworn statements, and that such corporation shall appoint the secretary of state its attorney in fact upon whom service of summons, notices, and process may be made so as to be effectual against the corporation.

Such foreign corporations are by this statute forbidden to "transact business or acquire, hold or dispose of property in this state" until they have complied with the foregoing requirements. The foreign corporation must also, "as a condition of its being permitted to begin or continue doing business within this state, comply with all the laws of the state with regard to foreign corporations." Id. The failure to comply with these provisions of law subjects the foreign corporation to a penalty of $500. This statute also provides:

"Every contract made by or on behalf of any such foreign corporation, affecting the personal liability thereof or relating to property within this state, before it shall have complied with the provisions of this section, shall be wholly void in its behalf and on behalf of its assigns, but shall be enforceable against it or them."

This statute has been before the court in *Ashland L. Co. v. Detroit S. Co.* 114 Wis. 66, 89 N. W. 904; *Chicago T. & T. Co. v. Bashford,* 120 Wis. 281, 97 N. W. 940; *Beaser v. Barber A. P. Co.* 120 Wis. 599, 98 N. W. 525; *Greek-Am. S. Co. v. Richardson D. Co.* 124 Wis. 469, 102 N. W. 888;

*Presbyterian M. Fund v. Thomas,* 126 Wis. 281, 105 N. W. 801; *Chickering-Chase Bros. Co. v. White,* 127 Wis. 83, 106 N. W. 797; *Allen v. Milwaukee,* 128 Wis. 678, 106 N. W. 1099. In these cases the statute was applied to a variety of conditions and its general validity sustained. In this case the contractual assent of the plaintiff and its acts in performance of the contract thereby created having been, as we have seen, wholly without the state, merely sending into this state to deliver the muniment of title or to collect the money due from the performance and execution in New York is not transacting business in this state within the meaning of this statute. The assent of the plaintiff and the acts of performance by it were in a place where this statute had no force—beyond the territory in which the statute had the force of law. The stock certificate was transmitted to this state for delivery, but this certificate is a mere muniment of title to the shares, which are fractional interests in the corporate property of the mining company situate outside of this state; and neither such transmission nor the collection of the money due the plaintiff for its services and disbursements in purchasing the shares in New York could be considered to fairly come within the terms "acquire, hold or dispose of property in this state." These words mean, not that the act of acquisition, but that the property, must be within this state, because the act of acquisition is sufficiently covered by the prohibition against transacting business. The transaction in question was then one which was outside of the terms of the statute mentioned.

Coming now to the mandate of this statute relating to the invalidity of contracts made by or in behalf of such unlicensed foreign corporation, it is noticeable that not all contracts so made are void, but only those "affecting the personal liability thereof," or those not coming within this limitation but which relate to property within this state. It is contended that the words "affecting the personal liability thereof" include all contracts for the breach of which the corporation

would be liable in damages or otherwise. This construction
is not permissible, first, because this would include all con-
tracts whatsoever, and the manifest intention of the statute is
to include only contracts coming within one or the other of
its disjunctive descriptive terms; second, because this would
render the words "or relating to property within this state"
surplusage and without weight or significance, because such
contracts would have been already covered by the prior clause,
"affecting the personal liability thereof," if we should give
such construction to this clause as to include all contracts
whatsoever. We are forbidden by familiar rules of interpreta-
tion to treat any word, phrase, or clause as meaningless or
surplusage, unless, indeed, there is no escape from such con-
clusion. The legislature in making this law may be presumed
to have selected these words to harmonize with the prohibition
in the same law against transacting business and also with a
view to the limitations on its own powers growing out of fed-
eral control over interstate commerce. *Cooper Mfg. Co. v.
Ferguson,* 113 U. S. 727. The prohibition against transact-
ing business may, when a proper case arises, be held to be
broader than one merely directed against carrying on busi-
ness within the state, but that question is not involved in the
determination of this case. But in all cases like the instant
case, not coming within the prohibition against transacting
business and sought to be brought within the clause now un-
der consideration and declaring the contract void, the words
"affecting the personal liability," used in describing one of
the prohibited classes of contracts, must be held intended to
exclude all unilateral contracts, like bills and notes, all con-
tracts fully executed outside of this state upon which there
remains as obligation only payment, or payment and delivery,
to be made in this state, and all contracts not by their stipula-
tions imposing duties or liabilities on such foreign corpora-
tion. Because the contract in question was not, so far as it
was made or took effect in this state, one affecting the per-

sonal liability of the plaintiff by any covenant ·or stipulation therein contained, and was wholly executed by the plaintiff in New York, and because it did not relate to property within this state, and did not constitute, on the part of the corporation, a transaction of business in this state, the plaintiff was entitled to recover thereon within the terms of the statute in question. A majority of the court are also of the opinion that the transaction between the plaintiff and defendant constituted an act of commercial intercourse; hence, as between these parties residing where they did, an act of interstate commerce within the doctrine of *Gibbons v. Ogden,* 9 Wheat. 1, 190, and *Passenger Cases,* 7 How. 283–573, 4 Rose's Notes, 709–717.

*By the Court.*—The judgment of the circuit court is affirmed.