INTERNATIONAL TEXTBOOK COMPANY, Appellant, vs. PETERSON, Respondent.

*October 15—November 5, 1907.*

*Foreign corporations: Contracts: Conditions of transacting business: Failure to comply: Interstate commerce: Statutes: Decisions of supreme court of United States.*

1. Plaintiff, a citizen of and domiciled in Pennsylvania, accepted, and to a great extent performed, in Pennsylvania a contract with the defendant, domiciled in Wisconsin, which included only incidentally the transfer of articles of property by the usual transportation agencies from Pennsylvania to Wisconsin, and consisted mainly in an obligation, for a promised consideration, to furnish, by such usual transportation agencies, the defendant in Wisconsin, from the domicile of the plaintiff in Pennsylvania, instruction or information continuously for a considerable period of time.   The few and incidental articles of property furnished were not objects of sale, barter, or exchange, but instrumentalities through which the plaintiff imparted its instruction.   *Held*, that the contract concerned that which was not a subject of trade or barter offered in the market as something having an existence and value independent of the parties to the contract, was not an instrumentality of commerce, but a mere incident of commercial intercourse, was not an interstate transaction, and was in violation of sec. 1770*b*, Stats. (1898), as amended, and hence void.

2. Upon subjects of interstate commerce the state court is bound by the actual adjudications of the United States supreme court with the reasons given therefor, rather than the *dicta* found in other opinions of the same court.

APPEAL from a judgment of the circuit court for Manitowoc county: MICHAEL KIRWAN, Circuit Judge. *Affirmed.*

The appeal is from a judgment dismissing the appellant's action at law upon contract and awarding costs.

It is established by the findings of fact of the trial court that the plaintiff, a Pennsylvania corporation domiciled at Scranton in said state, is the owner and proprietor of the International Correspondence Schools, and its business is that of furnishing instruction by correspondence to those who enter into contract with it for that purpose. It never complied with the requirements of sec. 1770*b*, Stats. (1898), as amended. It contracted with the defendant upon contract blanks furnished by plaintiff taking the form of a request by the defendant to the plaintiff to furnish defendant with a course of correspondence instruction in its school in the subjects embraced in the "Chemistry and Manufacture of Leather" scholarship, and with the copyrighted instruction papers, examination questions, and drawing plates prepared by plaintiff for said scholarship. The defendant agreed not to permit any person who was not a holder of the same scholarship to study from any of the copyrighted instruction papers, examination questions, keys, drawing plates, etc., that might be furnished him under this contract, and agreed to pay the plaintiff for said course of correspondence instruction, and instruction papers, examination questions, and drawing plates, the sum of $96.30 in instalments, viz., $5 at the time of signing the contract and $5 each and every month thereafter until said price was paid in full. This price included all charges for instruction in all subjects of the course for which the contract calls until defendant was qualified to receive a diploma or certificate of proficiency, provided defendant completed the course within five years from the date of contract. A complete set of the instruction papers and examination questions in pamphlet form, and

drawing plates used in teaching, was to be furnished to the
defendant in parts as he proceeded with his study, the plaint-
iff to have the right to terminate the contract for any breach
thereof on the part of the defendant without returning any
money paid on account of the same. On receipt of the full
price of said scholarship, or upon receipt of such lesser
amount as plaintiff's rules stipulated must be paid upon said
scholarship, plaintiff was to loan to defendant certain bound
volumes of instruction papers, examination questions, draw-
ing plates, and keys or outfit belonging to said course of in-
struction for defendant's use so long as defendant should
comply with the terms of the contract. Defendant, in case
he failed to comply with the terms of the contract, was upon
demand to return to plaintiff said bound volumes or outfit at
defendant's expense and in good condition, provided, how-
ever, that after defendant had paid the full price he was
not to be responsible in case said bound volumes or outfit was
lost, destroyed, or damaged in any way. On March 18, 1905,
the defendant delivered this form of application, signed by
him, to the plaintiff's agent in Wisconsin. The agent, who
was apparently engaged in soliciting and forwarding such
propositions, thereupon transmitted the same to the plaintiff
at Scranton, Pennsylvania, and at that city on March 24,
1905, the plaintiff accepted the application of the defendant
and notified defendant in writing of such acceptance. The
plaintiff from its office at Scranton, Pennsylvania, forwarded
to the defendant at Manitowoc, Wisconsin, by mail, the first
set of copyrighted instruction papers, examination questions,
and drawing plates, and the set of bound volumes loaned to
the defendant, all of which were received by the defendant at
Manitowoc, Wisconsin. The plaintiff has been in readiness
to perform ever since, but about three months after making
said application the defendant refused to make further pay-
ments and committed a breach of the contract.

The mode in which the contract was expected to be carried out was found by the court below as follows:

"That the plaintiff was to send to the defendant by mail or express from Scranton, Pennsylvania, to Manitowoc, Wisconsin, a first set of instruction papers, examination questions, and drawing plates pertaining to a course of instruction in the chemistry and manufacture of leather scholarship; that defendant on receipt of these was to study the same, write out his work, and forward it to the plaintiff at Scranton, Pennsylvania, by mail, together with such questions or inquiries as he might need to make relative to the work; that the plaintiff by its instructors, teachers, and correspondence clerks would thereupon correct the work of the defendant upon its receipt at Scranton, Pennsylvania, and return it to the defendant at Manitowoc, Wisconsin, by mail, together with answers to his questions or inquiries, and together with a further set of copyrighted instruction papers, examination questions, and drawing plates; that defendant was thereupon to take up this second set of papers, work upon them as before, and return his work to Scranton, Pennsylvania, in the manner above described, for correction; that this process was to continue until defendant had received from plaintiff all the copyrighted instruction papers, examination questions, and drawing plates contracted for by defendant's accepted application above described; that at the time the first set of copyrighted instruction papers, examination questions, and drawing plates were to be sent by the plaintiff to the defendant, the plaintiff was also to send to the defendant a set of bound volumes, the title thereto remaining in plaintiff, to be loaned to the defendant during such time as he made no default on his contract obligations."

The court below held that the transactions above detailed between plaintiff and defendant did not come within the description of interstate commerce and were in violation of sec. 1770b, Stats. (1898), as amended by sec. 27, ch. 351, Laws of 1899, and ch. 434, Laws of 1901.

For the appellant there were briefs by *Nash & Nash,* and oral argument by *A. L. Nash.* They contended, *inter alia,* that plaintiff did not "transact business" in Wisconsin. *Cat-*

*lin & P. Co. v. Schuppert,* 130 Wis. 642; *Ware C. Co. v. Anderson,* 107 Iowa, 231; *Beard v. Union & Am. Pub. Co.* 71 Ala. 60; *Charter Oak L. Ins. Co. v. Sawyer,* 44 Wis. 387; *Wyman v. Kimberly-Clark Co.* 93 Wis. 554; *Chicago T. & T. Co. v. Bashford,* 120 Wis. 281; *Sullivan v. Sullivan T. Co.* 103 Ala. 371; *Crook v. Girard I. & M. Co.* 87 Md. 138; *State ex rel. v. Am. Book Co.* 65 Kan. 847; *Hart v. Livermore F. & M. Co.* 72 Miss. 809. Plaintiff did not "hold property" in Wisconsin. *Chicago T. & T. Co. v. Bashford,* 120 Wis. 281; *Chickering-Chase Bros. Co. v. White,* 127 Wis. 83. The contract in suit did not affect the personal liability of the plaintiff. *Catlin & P. Co. v. Schuppert,* 130 Wis. 642. The contract did not relate to property within the state. *Catlin & P. Co. v. Schuppert,* 130 Wis. 642; *Hart v. Livermore F. & M. Co.* 72 Miss. 809. The contract is enforceable on plaintiff's behalf because the business to be transacted under it was in its nature interstate commerce, and the restrictions and prohibitions of sec. 1770*b,* Stats. (1898), cannot apply. *Brown v. Maryland,* 12 Wheat. 419; *Robbins v. Shelby Co. Tax. Dist.* 120 U. S. 489; *Bowman v. C. & N. W. R. Co.* 125 U. S. 465; *Leisy v. Hardin,* 135 U. S. 100; *Lyng v. Michigan,* 135 U. S. 161; *Schollenberger v. Pennsylvania,* 171 U. S. 1; *Stockard v. Morgan,* 185 U. S. 27; *Caldwell v. North Carolina,* 187 U. S. 622; *Norfolk & W. R. Co. v. Sims,* 191 U. S. 441; *Am. Exp. Co. v. Iowa,* 196 U. S. 133; *Swift & Co. v. U. S.* 196 U. S. 375; *Greek-Am. S. Co. v. Richardson D. Co.* 124 Wis. 469; *Catlin & P. Co. v. Schuppert,* 130 Wis. 642. Plaintiff's act in sending its agent into Wisconsin to solicit orders for goods then outside of the state was commerce. *Robbins v. Shelby Co. Tax. Dist.* 120 U. S. 489; *Gunn v. White S. M. Co.* 57 Ark. 24; *Coit v. Sutton,* 102 Mich. 324; *Toledo C. Co. v. Glen Mfg. Co.* 55 Ohio St. 217; *State v. Scott,* 98 Tenn. 254; *Talbutt v. State,* 39 Tex. Crim. 64; *Blakeslee Mfg. Co. v. Hilton,* 5 Pa. Sup. Ct. 184; *Cæsar v. Capell,* 83 Fed. 403; *Cooper Mfg. Co. v. Ferguson,*

113 U. S. 727; *People ex rel. H. & H. Co. v. Campbell,* 139 N. Y. 68; *McCall v. California,* 136 U. S. 104; *Asher v. Texas,* 128 U. S. 129; *Stoutenburgh v. Hennick,* 129 U. S. 141; *Lyng v. Michigan,* 135 U. S. 161; *Leisy v. Hardin,* 135 U. S. 100; *Gibbons v. Ogden,* 9 Wheat. 1, 4; *Passenger Cases,* 7 How. 283, 435; *Trade-Mark Cases,* 100 U. S. 82; *Higgins v. Keuffel,* 140 U. S. 428, 432; *Clementi v. Goulding,* 2 Camp. 25, 32; *Brightley v. Littleton,* 37 Fed. 103; *Preston v. Finley,* 72 Fed. 850, 859; *State v. Scott,* 98 Tenn. 254; *In re Tinsman,* 95 Fed. 648; *Brennan v. Titusville,* 153 U. S. 289; *Caldwell v. North Carolina,* 187 U. S. 622; *Comm. v. Pearl L. Co.* (Ky.) 49 S. W. 26. Plaintiff's act in collecting money in Wisconsin on the contract in suit was commerce, and of course interstate commerce. *Lyng v. Michigan,* 135 U. S. 161; *Leisy v. Hardin,* 135 U. S. 100; *Catlin & P. Co. v. Schuppert,* 130 Wis. 642; *Shaw P. Co. v. Ford* (Tex. Civ. App.) 41 S. W. 198; *Miller & Co. v. Goodman,* 91 Tex. 41; *Gibbons v. Ogden,* 9 Wheat. 1, 4; *Greek-Am. S. Co. v. Richardson D. Co.* 124 Wis. 469; *State v. Scott,* 98 Tenn. 254; *Robbins v. Shelby Co. Tax. Dist.* 120 U. S. 489; *Brennan v. Titusville,* 153 U. S. 289; *McCall v. California,* 136 U. S. 104; *Welton v. Missouri,* 91 U. S. 275, 280; *Cooper Mfg. Co. v. Ferguson,* 113 U. S. 727; *Fritts v. Palmer,* 132 U. S. 282; *Crutcher v. Kentucky,* 141 U. S. 47; *County of Mobile v. Kimball,* 102 U. S. 691; *Webber v. Virginia,* 103 U. S. 344; *State Freight Tax Case,* 15 Wall. 232.

For the respondent the cause was submitted on the brief of *A. P. Schenian.*

TIMLIN, J.  Aside from the question of interstate commerce involved, this case would be governed by the rule laid down in *Catlin & P. Co. v. Schuppert,* 130 Wis. 642, 110 N. W. 818, and the contract in question invalid because bilateral and containing an express undertaking on the part

of the plaintiff corporation affecting the "personal liability" of such corporation. That it would be for this reason within the letter of sec. 1770*b*, Stats. (1898), as amended, seems obvious. That it would be within the spirit of that act seems equally clear, if we consider that one purpose of the act was to enable persons contracting with foreign corporations to enforce the contractual obligations of such corporation in domestic tribunals, state or federal, without being obliged to follow such corporation for such purpose to the distant place of its domicile. The details of soliciting pupils, imparting instruction, the delivery, bailment, and return of books would also come within the prohibition against transacting business in this state.

When the adoption of the federal constitution conferred upon Congress the power "to regulate commerce with foreign nations and among the several states and with the Indian tribes," at the same time leaving the states with all the ordinary sovereign powers over persons and property within their boundaries, there was created a very peculiar situation, under which judicial questions must constantly arise, in many instances not to be reached or settled by general rule; for the ever-varying points at which interstate commerce tends to blend with domestic commerce, the ingenious changes and combinations which result from commercial activity, the progress of invention and discovery in the arts and sciences, must always continue to present for judicial determination new questions baffling any attempt at comprehensive rules or generalizations, and only to be solved by the retail process of inclusion and exclusion. Under these conditions, and realizing that the final interpreter of the law on this subject is the supreme court of the United States, we take up the question involved in the case at bar with some diffidence.

The plaintiff, citizen of and domiciled in Pennsylvania, accepted, and to a great extent performed, in Pennsylvania a contract with the defendant, domiciled in Wisconsin, which

included only incidentally the transfer of articles of property by the usual transportation agencies from Pennsylvania to Wisconsin, and consisted mainly in an obligation to furnish, by such usual transportation agencies, the defendant in Wisconsin, from the domicile of the plaintiff in Pennsylvania, instruction or information continuously for a considerable period of time. The few and incidental articles of property furnished were not objects of sale, barter, or exchange, but instrumentalities through which the plaintiff imparted its instruction. From one viewpoint the situation is quite analogous to the newspaper subscription contract by which a resident of one state agrees to receive and pay for a newspaper prepared and printed in another state and transmitted to him by mail. *Preston v. Finley,* 72 Fed. 850, 859. But the analogy is not quite perfect, because the newspaper during its ephemeral life is a subject of trade and barter and is something having an existence and value independent of the parties to the contract of subscription. Quite analogous, also, to the contract in the case at bar would be a contract by a resident of one state to supply from his place of residence a resident of another state with market quotations, a contract in the same way to furnish one with information concerning the transactions of the patent office, the decisions of courts, or the proceedings of legislatures, or to acquaint one with the processes or secrets of an art, craft, or trade. More remotely analogous would be a contract made under the same circumstances for enlarging or making pictures from photographs furnished by the resident of another state to be transmitted to the latter from the state where made or enlarged, by the usual means of transportation, although in the decided cases great weight seems to have been given to the fact that the tangible objects, consisting of frames and pictures, are themselves subjects of barter and sale and consequently articles of commerce. *Brennan v. Titusville,* 153 U. S. 289, 14 Sup. Ct. 829; *State v. Willingham,* 9 Wyo.

290, 62 Pac. 797, 52 L. R. A. 198; *State v. Scott*, 98 Tenn. 254, 39 S. W. 1, 36 L. R. A. 461. But the decisions of the supreme court of the United States with reference to policies of insurance, and more particularly the reasons upon which these decisions are based, seem to exclude from the domain of interstate commerce the contract and transactions in the case at bar.

In the leading case of *Paul v. Virginia*, 8 Wall. 168, repeated with approval in *Hooper v. California*, 155 U. S. 648, 15 Sup. Ct. 207, that eminent court said, regarding a policy of insurance issued in one state and transmitted through the usual channels of transportation to a citizen in another state:

"These contracts are not articles of commerce in any proper meaning of the word. They are not subjects of trade and barter, offered in the market as something having an existence and value independent of the parties to them. They are not commodities to be shipped or forwarded from one state to another and then put up for sale. They are like all other personal contracts between parties which are completed by their signature and the transfer of the consideration. Such contracts are not interstate transactions, though the parties may be domiciled in different states."

In *New York L. Ins. Co. v. Cravens*, 178 U. S. 389, 20 Sup. Ct. 962, where the life insurance policy of a mutual life insurance company provided that the policy should be construed and interpreted according to the laws of the state of New York, and the place of the contract was expressly agreed to be the principal office of the company in the city of New York, the supreme court adhered to its ruling in *Paul v. Virginia, supra,* and repeated the reason for that rule in these words: "The contract of insurance is not an instrumentality of commerce. The making of such a contract is a mere incident of commercial intercourse." Also, *Nutting v. Massachusetts*, 183 U. S. 553, 22 Sup. Ct. 238. These cases lead us to believe in the existence of a tentative rule,

which, while it does not stretch very far into the domain of
commerce, still comprehends the contract in question, because
that contract concerns something not a subject of trade or
barter having an existence or value independent of the par-
ties to the contract, and is like the insurance policy, "not
an instrumentality of commerce, but a mere incident of com-
mercial intercourse." Upon the subject of interstate com-
merce, where the authority of the federal court of last resort
is paramount, and where our duty is to follow that court,
we feel bound by the actual adjudications of that court with
the reasons given therefor in the cases above cited, rather
than the *dicta* found in some of the opinions filed in the *Pas-
senger Cases,* 7 How. 283, 435, or in *Gibbons v. Ogden,* 9
Wheat. 1, 4.

*By the Court.*—The judgment of the circuit court is af-
firmed.

Dodge, J., dissents.