Kinkead, J.
Plaintiff is a foreign corporation. It alleges compliance with Sections 178 and 179 of the General Code, and that it has been qualified and authorized to do business in Ohio. It alleges that in July, 1915, it sold to the defendant f. o. b. Kansas City, Mo., a car load of hogs consisting of 187 in number and weighing 28,090 pounds, for which defendant agreed to pay *18 eight cents per pound. It avers compliance of the contract by it, and seeks to recover the sum of $2,247.20 claimed to be due thereon.
Defendant sets up as his first defense the claim that the contract of sale was entered into and executed in the state of Ohio, and that both parties intended the same to be carried out and completed in this state; that at the time of entering into the contract plaintiff was not engaged in interstate commerce, and was-not entirely non-resident, soliciting business by correspondence and by traveling salesmen; but that it was a foreign corporation organized for profit, doing business and owning and using part of its capital within the state, etc. It is averred that it was doing business without having complied with the laws of this state, and that it had not pr cured from the Secretary of State a certificate authorizing it to lo business.
Plaintiff submits a demurrer -to this defense.
Defendant claims that the transaction is within the penalty prescribed by Gr. C. 5508, while plaintiff seeks to avoid its effect by averring that by an oral contract it sold to defendant at Kansas City, Mo., a car load of hogs for which defendant agreed to pay the sum of eight cents per pound; that it loaded and shipped the hogs from Kansas City to the defendant at Columbus, Ohio.
Plaintiff avers that as a foreign corporation it complied with Sections 178 and 179, which concedes that it is subject to such provisions, and admits that it had not complied therewith at the time the contract of sale was made.
It seeks to avoid the provisions of Section 5508 by stating facts which will make it appear that the contract was fully executed outside of Ohio, and that nothing remained but an obligation of payment or payment and delivery. Plaintiff’relies upon Catlin & P. Co. v. Schippert, 130 Wis., 642, where it was held that the words of a similar statute 'of that state containing the words, “affecting the personal liberty,” were construed to exclude all unilateral contracts, like bills, notes, and contracts that were fully executed outside Wisconsin upon which *19 there remains as obligations only payment, or payment and delivery to be made in that state. Such transactions were considered as constituting acts of commercial intercourse and hence, as between the parties an act of interstate commerce.
The contention of counsel for plaintiff is that a foreign corporation, subject to our registration laws, may carry on interstate transactions and interstate commerce without being subject to any penalty, and that the principle of the Wisconsin rule applies.
The dictum of Wisconsin decisions under similar statute is that contracts affecting the personal liability of foreign corporations do not include all contracts for the breach of which the corporation would be liable in damages or otherwise. The courts of that state hold that a contract which does not by express covenant or stipulation contained therein affect the personal liability of the corporation does not become subject to the statute even though the foreign corporation is otherwise subject to the registration statutes and has complied therewith. Catlin v. Schippert, 130 Wis., 642.
The Wisconsin decisions recognize the right of foreign corporations, although complying with registration laws, to still enter into the class of excepted contracts that may be interstate transactions, without being subject to the penalty of the statute.
The averment of the petition of sale to defendant “f. o. b. Kansas City, Mo.,” is construed to evidence a sale for shipment. Tustin Fruit Ass’n v. Fruit Co., 53 Pac., 693, 697 (Cal.).
It is held that a contract for sale of fruit.at “three cents per pound f. o. b. Haywards, is to be construed as showing that the price was to be paid or become due when the fruit was delivered to the carrier at Haywards.” Blackwood v. Packing Co., 76 Cal., 212; 9 Am. St., 199.
In mercantile parlance, it means “free on board” and that the goods are delivered to the carrier at the place named free of drayage charges. Muskegon C. R. Co. v. Mfg. Co., 135 Pa., 132.
*20 In Dannemiller v. Kirkpatrick, 201 Pa. St., 218 (1902), it is held that:
“In the absence of an agreement to the contrary, when a vendor sells goods to a vendee residing at a distant place, a delivery of the goods to a carrier for transportation is a delivery to the purchaser, and especially is this true when a bill.of lading naming the purchaser as a consignee is transmitted to and received by the purchaser. The delivery to the carrier vests the title to the property in the purchaser, and the risks of transportation must be assumed by him.”
The rule, however, does not obtain where the parties have otherwise stipulated.
The court further points out that if it be the intent of the parties that delivery is tu be made at the destination, then delivery to carrier will not divest the title of the vendor, nor pass it to the purchaser, until it reaches the place of destination.
It may then become a question of where delivery is to be made and when the title is to pass.
If the facts are in dispute it is a question of law; if not in dispute it is then for the jury.
Our sales statute, Section 8426, covers this point.
On the facts alleged in the petition it would appear that delivery was at Kansas City, and hence title passed to defendant at Kansas City, Missouri.
It would thus appear to be an interstate transaction, an act of interstate commerce.
That a foreign corporation, though subject to registration under our foreign corporation regulation, whether registered or not, may nevertheless engage in interstate transactions and enforce them in this state, there seems no doubt. It may, therefore,- sue and recover on interstate contracts, without being subject to our statutes.
Doing business in this state as contemplated by our statutes of registration comprehends business transactions that are subject to such laws.
Transactions that are not entered into by reason of and. on account of owning and using part of the corporate property *21 of such, foreign corporation, such, as an act of interstate commerce can not be subjected to the penalty of our laws.
The matter submitted being the demurrer to the first defense our consideration is to be confined to the facts alleged therein.
Defendant avers that the contract of sale was entered into in Ohio, and that both parties intended the same to be carried out and completed in this state. It is averred that at the time of making the contract plaintiff was not engaged in interstate commerce.
The averment that the contract of sale was entered into in Ohio, is a conclusion.
The first defense does not state sufficient facts to show the locus of the agreement, nor where delivery was to be made, nor any facts showing agreement that delivery f. o. b. Kansas City was not the place where title passed.
Nor does averment of the fact that plaintiff owns and uses part of its working capital in Ohio, and that it was doing business in this state, go to the claim of plaintiff that the contract of sale was f. o. b. Kansas City, Missouri.
Demurrer operates only upon admitted facts. But it will search the record and notice specific admissions by the pleader, which are inconsistent with facts pleaded as a separate defense.
For example in the second paragraph of the second defense, defendant states: - --*
“further answer defendant admits that on or about the 10th day of July, 1915, under an oral contract of sale plaintiff sold to this defendant f. o. b., Kansas City, Missouri, one ear load of hogs consisting of 187 in number, for which the defendant agreed to pay the sum of eight cents per pound within four months from date of -shipment. ’ ’
Then follows as an unauthorized improper form of denial:
“And further answering said defendant denies each and every allegation in said petition contained not herein specifically admitted to be true. ’ ’
The above admission is a complete admission of’ plaintiff’s claim in its petition, and is wholly inconsistent with the first *22 defense, as well as the facts stated in the second cause of action.
Defendant can not make the claim which he seeks to present without a general denial.
In the second cause of action in defendant’s cross-petition there is pleaded an alleged contract of sale of hogs on a verbal contract for the purpose of feeding and fattening them for market, to be paid for when matured and sold, in which contract plaintiff verbally warranted the hogs to be clean, thrifty native stock and straight feeders, and that they had been vaccinated and were immune from cholera, etc. He then pleads a breach of contract of warranty and seeks recovery of damages.
If defendant claims the contract set up by him was the real contract — the whole contract — then he should not have admitted the contract alleged by plaintiff, his qualified denial not serving any purpose whatever.
If defendant does claim the contract set up in his second cause of action to have been the contract made, he should have entered a general denial under which he could claim that the contract pleaded by plaintiff was not the contract, and which would enable him to set up the complete contract, as claimed in the second cause, and to show that the amount claimed by plaintiff was not due.
The first defense states that the
“said contract described in said petition was entered into and executed in the state of Ohio,” etc.
It fails to state facts therein showing it not to be a contract of sale f. o. b. Kansas City, Missouri, as alleged in the petition. A claim that the contract was entered into in Ohio is in the nature of an argumentative denial.
Each defense must be complete in and of itself. The defense demurred to must set out what defendant claims the real, complete contract to have been. There should be neither a qualified nor argumentative denial.
Defendant either did, or did not enter into the contract f. o. b. Kansas City, Missouri.
*23 ITis defense in which he seeks to state facts to show that the contract actually made is subject to the penalty of Section 5508 must not only be full and complete in itself, but it must disclose a contract made by plaintiff while doing business in this state, and that it was not an interstate transaction.
With the qualified admission of the contract alleged by the petition, and an unauthorized form of denial under which the court will not undertake to ascertain precisely what is admitted and what is denied the defense fails to withstand the attack by demurrer.
Suppose it be assumed that it is an Ohio contract, and .that it was made prior to actual compliance by plaintiff with Sections 179 et seq., does it become subject to a penalty under General Code, Section 5508, which provides that:
“Every contract made by or on behalf of any such foreign corporation, affecting the liability thereof, or relating to its property within this state, before it shall have complied with the provisions of section one hundred and seventy-eight of the General Code, shall be wholly void on its behalf 'and on behalf of its assigns, but shall be enforceable against it or them.”
The intent of the statute, no doubt, was to penalize a foreign corporation by rendering void a contract made by it without compliance with Section 178, thus preventing.it from bringing action thereon.
Every contract made on its behalf, affecting the liability thereof shall be wholly void on its behalf.
Any contract made by the corporation in its own behalf upon which it might have occasion to sue, to vindicate its rights would have relation to the liability of the defendant, not its own.
Any contract on which a citizen of Ohio would have occasion to bring suit against the corporation would affect the liability thereof.
It is difficult to perceive how any contract may be invalidated by the statute which affects the liability of a corporation, unless it be a contract -which by its full terms may give right to the *24 corporation to bring action thereon against a citizen of Ohio, and under which contract defendant may have the right to counter-claim for breach.
In such case the contract affects the liability of both the Ohio citizen and the foreign corporation.
The contract as alleged in plaintiff’s petition does not affect its liability. It is not subject to the penalty of Section 5508, and, therefore, is not void.
But, if on the other hand, the contract is not as claimed by plaintiff, but is that claimed by defendant, not in his first defense, but in his second cause of action, where a liability is alleged against plaintiff upon an alleged contract o£ warranty, it might then be claimed that there is a contract affecting the liability of the foreign corporation.
A similar statute in 'Wisconsin was construed to exclude all unilateral contracts, like bills, notes, and contracts fully executed outside that state upon .which there remains only an obligation of payment. Catlin v. Schippert, 130 Wis., 642.
"It is contended, ’ ’ says the court, ‘ ‘ that the words: ‘ affecting the personal liability thereof’ include all contracts for the breach of which the corporation would be liable in damages or otherwise. This construction is not permissible,” etc.
And again it is stated that:
“the words ‘affecting the personal liability’ used in describing one of the prohibited classes of contracts, must be held to exclude all unilateral contracts, like bills and notes, all contracts fully executed outside of this state upon which there remains an obligation only payments, or payment and delivery, to be made in this, state, and all contracts not by their stipulations imposing duties or liabilities on such foreign corporation. Because the contract in question was not, so far as it was made or took effect in this state, one affecting the personal liability of the plaintiff by any covenant or stipulation therein contained, and was wholly executed in New York and because it did not relate to property within the state, and did not constitute a transaction of business in this state, the plaintiff is entitled to recover thereon within.the terms of the statute.”
*25 The dictum of the opinion is to the effect that a contract which by its stipulation imposes duties or liabilities on such foreign corporation may be invalidated by the states.
If we assume that the contract to purchase the hogs was an Ohio transaction, and that in connection with, as part and con-, dition thereof, plaintiff warranted the hogs to be of certain kind and quality and free from disease, then it may be urged that the warranty as an'express provision imposing a duty and liability upon the corporation creates a liability.
If a contract of warranty was made, it is such as affected the liability of the corporation.
If every contract affecting the liability is wholly void on its behalf, does the statute mean that that part of the contract giving the corporation a right of redress against the citizen is void? The statute does not clearly so state.
Every contract affecting the liability shall be wholly void on its behalf, would have to be constructed to comprehend or mean that if a contract affecting its liability also conferred procedural right upon the corporation, such part of the contract is to be void, but the contract affecting its liability may be enforced against it.
The statute designed to invalidate only the part conferring rights upon the corporation, and still it states that a contract affecting the liability thereof is void. If the statute can be sustained and applied it is by resort to and construction of the words contract made on behalf of any foreign corporation shall be wholly void on its own behalf, and not by any reliance upon every contract of a foreign corporation affecting the liability thereof.
Liability means amenability and responsibility to law (Wood v. Currey, 57 Cal., 208, 209). Liability contemplates a condition that gives rise to an obligation to do a particular thing. Haywood v. Shreve, 14 N. J. L., 94, 104. Liability is responsibility (McElfresh v. Kirkendall, 36 Iowa, 224, 226; Lattin v. Gillette, 95 Cal., 317). Liability has reference to responsibility in tort, as well as in contract. Miller v. Land Co., 134 Cal., 586.
*26 If the words affecting the liability were to be the determinate factor in its construction, the statute would be meaningless.
If the contract affects the corporate liability as well as being one made on its behalf which confers upon the corporation a right to sue, then if the penalty attaches it could not enforce the contract in its favor, but the other party could enforce the liability of the corporation.
The language of the statute is unfortunate, and not clear and definite.
In considering the demurrer to the first defense, cognizance can not be taken of the contract alleged in the second cause of action which may be surmised to be defendant’s version. But as already stated defendant has admitted that the contract described in the petition was entered into in Ohio, and was to be there carried out. Under such state of pleading, without complete denial that the contract pleaded by plaintiff was the contract, and without all the essential facts being stated in the first defense, it is clear that the penalty of Section 5508 can not be invoked.
The claim of alleged contract and breach of warranty made in the cross-petition presents a novel question. Without proper correction of the pleading as indicated it can not be fairly raised.
Legal ideas concerning breaches of warranty and the nature of a cause of action thereon are somewhat obscure.
Warranty has been used in such a great variety of senses, and the decisions have been so anomalous, that it is said that an attempt to arrive at a satisfactory conclusion about any principle supposed to be settled by them, would be hopeless if not absurd. McFarland v. Newman, 9 Watts., 55, 34 Am. Dec., 497; Oil Co. v. Vuchanan, 120 Fed., 906, 57 C. C. A., 498.
It is said to be an agreement which refers to the subject matter of a contract, but not an essential part of it (40 Cyc., 492); an express or implied statement of something which the parties undertake shall be a part of the contract, and yet collateral to the express object of it (40 Cyc., 492-93). An indemnity against failure of performance (I.d.). It is used in the law of sales of *27 personal property, to indicate a. collateral undertaking on the part of the seller as to quality or condition. (Id.) Equivalent to a condition precedent. It is used as an express promise as to quality which is a condition until the sale is executed, and a warranty after it is executed. 40 Cyc., 493, N. 23.
If the warranty be not regarded as part of an express contract, as not an essential part of it, merely having reference to the subject-matter of a contract or as an independent eondi-_ tion, then it may be • difficult to square such a claim with the penalty of Section 5508.
The pleadings should definitely clear up the locus of the contract, and the place where the cause of action accrued whether in Missouri or in Ohio.
Another question occurs to me concerning the cause of action. A right of action is property as if it were a corporeal possession. Power v. Harlow, 57 Mich., 107 (1885); Gibson v. Gibson, 43 Wis., 1, 28 Am. Rep., 527.
There is no doubt that a right of action, where it comes into existence under common law principles and is not given by statute as a mere penalty or without equitable basis, is as much property as any tangible possession, and as such within the rules of constitutional procedure. Dunlap v. Ry., 50 Mich., 470, 474.
The term “property” includes a cause of action. Seaman v. Clark, 69 N. Y. Supp., 1002, 1004, 60 App. Div., 416. It is as much property as a corporeal possession. Power v. Harlow, 57 Mich., 107.
The demurrer to the first defense is sustained.
The court of its own motion orders that'the denial of each and every allegation not admitted to be true be stricken out.
That defendant make it definite and certain whether he admits or denies that he made the contract alleged in the petition.
That he make it definite and certain in his alleged second cause of action, whether he undertakes to set forth what he claims to have been the full and complete contract, and whether he admits or denies the contract alleged by plaintiff.
*28 It has been stated that defendant should file a general denial and then plead its version of the contract. Of course I am not fully informed of the exact claim defendant makes. It might be that specific denials and new matter should be the course adopted.
This is one instance where the vice of using an unauthorized form of denial plainly appears. The tools provided for by the code are much more effective than some form not provided by it. A party defendant is not required to admit allegations made by plaintiff. If there be no general or specific denial of matter alleged by plaintiff, of course it is admitted. Counsel oftentimes are better off not to undertake to make admissions; sometimes the' effect of their admission is detrimental. This case is a striking instance of that fact. I have observed others that haunted counsel at and during trial. General denial can not often be made. This seems an appropriate ease for its use, but when that plea can not be resorted to, the specific denial is much more effective than the common form of denial of each and every allegation not admitted or denied, which is not authorized by the code and should no longer be tolerated.
I hope the spirit will be appreciated when I jocularly remark that I have made much more headway in lecturing law students than I ever expect to make in my present capacity.
I think it just as objectionable to take up so much space in repetition of matter pleaded by the other side by admission of many allegations made by the adversary. “Let the judge do it”; that is, counsel should not admit anything but should specifically deny all that the pleader does not admit, and let the burden rest on the judge to discover what is admitted by failure to deny. This will be more effective.
The code does not require, nor authorize a party to enter a plea of admission; it merely provides for a general or special denial and plea of new matter. If I were to advocate reforms in the code, I would recommend quite a number of “Thou shalt nots” commandments, leaving the code as it is. The *29 “shalt nots” would consist in injunctions not to violate the provisions of the code.
Counsel have asked that some consideration be given the entry-in the other case recently before the court. In case No. 71,154 the plaintiff brought suit in replevin under a chattel mortgage taken by it on the hogs sold to defendant*for the value of which this action is brought.
The court sustained a-demurrer to the reply, and searching the record ordered that the case be dismissed.
On re-examination of the question involved in that case and considering the claims therein made in the light of the conclusions reached in this case, some suggestions are made which ought to meet the approval of both parties.
It is of course not proper to have two separate actions pending or having relation to the same action.
Plaintiff might have pursued different courses. It could have sued for the amount due on sale of the hogs; or it might sue in replevin; or it might sue for the value of the hogs, and to foreclose the chattel mortgage, as separate causes in the same action.
But it should not be allowed to subdivide its claims by bringing two separate actions as has been done.
Plaintiff makes the same claim in case No. 71,154, as in this one, that the chattel mortgage was given in consummation of a contract entered info in the state of Missouri.
I think it best to consolidate the two cases. The judgment of dismissal should be entered and defendant’s cross-petition in that case should be incorporated in this case, when the answer and cross-petition is amended.